**The PEOPLE of the State of Colorado, Petitioner–Appellee,**

**In the Interest of H.W., III, Juvenile–Appellant.**

**No. 08CA0840.**

Colorado Court of Appeals, Div. III.

April 16, 2009.

Rehearing Denied June 11, 2009.

As Modified on Denial of Rehearing July 9, 2009.

**1136**

John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, CO, for Petitioner–Appellee.

B. Arthur Perlman, Littleton, CO, for Juvenile–Appellant.

Opinion by Judge DAILEY.

H.W., III, a juvenile, appeals the judgment adjudicating him delinquent based on acts that, if committed by an adult, would constitute a class 4 felony of accessory to the crime of attempted murder. H.W. also appeals his placement in the Division of Youth Corrections (DYC). We reverse the judgment and remand with directions.

In their delinquency petition, the People alleged:

> On or about June 15, 2007, [H.W.] unlawfully and feloniously rendered assistance to LAMONT NORRIS, with intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of LAMONT NORRIS for the commission of a crime, knowing that person was charged by pending information, indictment, or complaint with the crime of CRIMINAL ATTEMPT TO COMMIT MURDER IN THE FIRST DEGREE, 18–3–102(1)(a); 18–2–101, C.R.S., a class 1 or 2 felony; in violation of section 18–8–105(1), (3), C.R.S.

At trial, the prosecution presented the following evidence: (1) H.W. and a group of his friends approached the victim and a group of his friends outside a party; (2) one of the members in H.W.'s group, Lamont Norris, approached the victim and asked him if he knew where "the Crabs" (i.e., slang for Crips) were; (3) when a friend of the victim tried to intervene to ward off any trouble, H.W. told the friend to "fall back" before something bad happened to him; (4) H.W. then turned to Norris, who had been nervously pacing back and forth, and told Norris to "do what you do"; (5) two people, including H.W., saw "sparks" or "flashes" come from Norris, at which point the victim was shot five times; (6) during the shooting, H.W. ran back to his car; (7) as H.W. was about to pull away, Norris jumped into his car; (8) H.W. drove to another part of town, where he let Norris out of the car; and (9) H.W. was aware that Norris had been the shooter.

Following the close of the evidence, H.W. moved for a judgment of acquittal, arguing that the People had failed to establish that he had any knowledge that a crime had been

committed. The juvenile court denied H.W.'s motion.

During closing argument, H.W. argued that the People alleged only that, at the time of the offense, H.W. knew that Norris was charged by pending information, indictment, or complaint, and that the prosecution had offered "absolutely no evidence whatsoever" to support that allegation.

The juvenile court specifically found that H.W. "knew that [Norris] had committed a crime" when he offered him assistance. The juvenile court did not make any finding as to whether, at the time of the offense, H.W. knew Norris was charged with a crime.

Based on its finding, the juvenile court adjudicated H.W. a delinquent for acts which, if committed by an adult, would constitute a class 4 felony and ordered H.W. to be placed in DYC for two years.

## I. Variance Between the Petition and the Evidence

H.W. contends that the juvenile court erred when it denied his motion for acquittal because there was a "fatal variance" between the petition and the evidence presented at trial. The "fatal variance" to which H.W. alludes is that while the petition charged him with rendering assistance to Norris knowing that Norris was *charged with a crime,* the theory on which the prosecution proceeded, and upon which H.W. was adjudicated, was that he rendered assistance to Norris knowing Norris had *committed a crime.* We agree that this variance requires reversal of H.W.'s adjudication.

### A. Preserved Error

■ Initially, we reject the People's assertion that H.W. has not preserved his "fatal variance" argument for appeal. As pointed out by the People, H.W. neither explicitly challenged the sufficiency of the petition, nor used the phrase "fatal variance," in the juvenile court. Nonetheless, during closing argument, he asserted that, although the People had charged him only with knowing that Norris was charged by pending information, indictment, or complaint, they had offered "absolutely no evidence whatsoever" to support that allegation.

In our view, H.W.'s closing argument essentially presented to the juvenile court the sum and substance of the argument he now makes on appeal. Consequently, we consider his argument properly preserved for appellate review. *People v. Silva,* 987 P.2d 909, 913 (Colo.App.1999).

### B. Variance

■ A variance occurs when the charge contained in the charging instrument differs from the charge of which a defendant is convicted. *People v. Rodriguez,* 914 P.2d 230, 257 (Colo.1996). There are two types of variances:

(1) simple variance, which "occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged" in the charging instrument; and (2) constructive amendment, which changes an essential element of the charged offense and thereby alters the substance of the charging instrument.

*Id.* (citation omitted) (quoting *United States v. Williamson,* 53 F.3d 1500, 1512 (10th Cir. 1995)); *see also People v. Huynh,* 98 P.3d 907, 911 (Colo.App.2004).

■ Unlike simple variances, constructive amendments effectively subject a defendant to the risk of conviction for an offense that was not originally charged in the charging instrument. *Rodriguez,* 914 P.2d at 257; *see People v. Jefferson,* 934 P.2d 870, 872 (Colo. App.1996). Consequently, constructive amendments are per se reversible error, whereas simple variances are not reversible unless they prejudice a defendant's substantive rights. *Huynh,* 98 P.3d at 911.

Here, H.W. was charged under section 18–8–105(1) and (3), C.R.S.2008. Section 18–8–105(1) sets forth the basic elements of the crime of accessory. It provides that "[a] person is an accessory to crime if, with intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of another for the com-

mission of a crime, he [or she] renders assistance to such person."

Section 18–8–105(3) provides:

Being an accessory to crime is a class 4 felony if the offender knows that the person being assisted *has committed, or has been convicted of, or is charged* by pending information, indictment, or complaint *with a crime,* and if that crime is designated by this code as a class 1 or class 2 felony.

(Emphasis added.)

■ In their petition, the People alleged that, with respect to section 18–8–105(3), H.W. had "unlawfully and feloniously rendered assistance to [Norris] ... knowing that person *was charged by pending information, indictment, or complaint with* the crime of criminal attempt to commit murder in the first degree" (emphasis added). The People did not, however, present *any* evidence on that theory. Instead, they presented evidence of, and asked that H.W. be adjudicated a delinquent on, an alternative basis under section 18–8–105(3), that is, that he knew Norris had committed a crime when he drove him away from the scene of the shooting. In doing so, the People altered an essential component of the charge, and thus, effected a constructive amendment.

Because the prosecution could not seek to constructively amend the charge, it had to prove the charge as alleged. As noted above, it failed to prove that charge.

### C. Remedy

■ When the prosecution fails to present proof of the offense charged, double jeopardy prevents the prosecution from availing itself of a second opportunity to try the accused on that charge. *See generally People v. Leske,* 957 P.2d 1030, 1035 n. 5 (Colo.1998) (double jeopardy "protects against a second prosecution for the same offense after acquittal") (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)); *see also People v. Lybarger,* 700 P.2d 910, 916 (Colo.1985) ("[I]f the evidence is insufficient to support the conviction, the retrial of the defendant on the same charge would constitute a violation of the constitutional guarantee against double jeopardy.");

*People v. Miralda,* 981 P.2d 676, 680 (Colo. App.1999) ("[I]f a conviction is reversed on appeal because of an insufficiency of the evidence, no retrial may occur.").

■ Where, however, there is insufficient evidence to sustain a conviction for a particular offense, but the evidence is sufficient to uphold a conviction on a lesser included offense, the appropriate remedy is to remand the case to the trial court with directions to enter judgment and sentence on the lesser included offense. *People v. Naranjo,* 200 Colo. 1, 4, 612 P.2d 1099, 1101–02 (1980); *see also Jefferson,* 934 P.2d at 872–73 (where constructive amendment resulted in failure to prove charged offense, proper remedy was to enter judgment on lesser included offense).

The question here, then, is whether there is a lesser included offense (1) to the one that was charged but not proved (2) for which sufficient evidence exists to sustain the conviction. We conclude there is not.

■ In Colorado, a "statutory elements" test is used to determine whether an offense stands in a lesser included relationship to another offense. *Leske,* 957 P.2d at 1036. Under that test, "if proof of the facts establishing the statutory elements of the greater offense necessarily establishes all of the elements of the lesser offense, the lesser offense is included.... If, however, each offense necessarily 'requires proof of at least one additional fact which the other does not,' the strict elements test is not satisfied," and the offenses do not stand in a greater-lesser included relationship to one another. *Id.* (citations omitted; quoting *People v. Henderson,* 810 P.2d 1058, 1063 (Colo.1991)).

■ Section 18–8–105(3)–(6), C.R.S. 2008, sets forth the various circumstances under which the accessory statute is violated, and the punishments therefor. Section 18–8–105(3) has been quoted above. Section 18–8–105(4)–(6) provide:

(4) Being an accessory to crime is a class 5 felony if the offender knows that the person being assisted is suspected of or wanted for a crime, and if that crime is designated by this code as a class 1 or class 2 felony.

(5) Being an accessory to crime is a class 5 felony if the offender knows that the person being assisted has committed, or has been convicted of, or is charged by pending information, indictment, or complaint with a crime, or is suspected of or wanted for a crime, and if that crime is designated by this code as a felony other than a class 1 or class 2 felony; except that being an accessory to a class 6 felony is a class 6 felony.

(6) Being an accessory to crime is a class 1 petty offense if the offender knows that the person being assisted has committed, or has been convicted of, or is charged by pending information, indictment, or complaint with a crime, or is suspected of or wanted for a crime, and if that crime is designated by this code as a misdemeanor of any class.

Section 18–8–105(5) and (6) have the same three alternative bases for liability as section 18–8–105(3), that is, knowing that the person being assisted (1) has committed, (2) has been convicted of, or (3) is charged with, listed offenses. The difference is that the offenses listed in section 18–8–105(5) and (6) are not as serious as those listed in section 18–8–105(3).

Section 18–8–105(5) and (6) also add a fourth basis of liability, which is the sole focus of section 18–8–105(4), that is, knowing that the person assisted is "suspected of or wanted for" various types of crimes.

Because the three other bases of liability are separate and distinct from the basis of the charge here, that is, knowing that the person assisted was charged with another offense, they would not qualify as lesser included forms of the charged offense. And, because there was no proof that, at the time he acted, H.W. knew Norris was charged with any other offense, there was insufficient evidence to sustain a conviction under section 18–8–105(5) and (6)'s lesser included forms of the offense charged.

Because there was no lesser included offense to the one charged that could be sustained by the evidence, we conclude that not only must H.W.'s adjudication be reversed, but the case against him must be dismissed as well.

In reaching this conclusion, we have considered, but reject, the possibility that section 18–8–105(3) contains not an element of an offense but only a sentencing enhancer, the vacating of which would leave intact a conviction for some type of "base" offense. The problem with this position is that we can find no "base offense" apart from those resulting from the combined consideration of section 18–8–105(1) and (3) through (6).

Admittedly, subsections (3) through (6) bear some similarity to other statutory provisions that have been identified as setting forth sentence enhancement factors rather than elements of a crime. However, in those other instances, there is a base crime *with* a penalty upon which the enhancement provisions operate. *See, e.g.,* § 18–4–203(2), C.R.S.2008 (base offense of second degree burglary is punished as a class 4 felony unless enhancing circumstances of subsections (2)(a) or (2)(b) are present); § 18–3–302(5), C.R.S.2008 (base offense of second degree kidnapping is a class 4 felony, except as provided in subsections (3) and (4) of § 18–3–302); § 18–3–303(2), C.R.S.2008 (base offense of false imprisonment is a class 2 misdemeanor, unless committed under the circumstances identified in § 18–3–303(2)(a) and (b)); § 18–3–402(2), C.R.S.2008 (base offense of sexual assault is a class 4 felony, except as provided in subsections (3), (3.5), (4), and (5) of this section).

Here, there is no base crime *with* a penalty. While arguably the "base crime" of accessory could be said to be set forth in section 18–8–105(1), no provision in section 18–8–105 provides a punishment solely for the acts identified in subsection (1); punishments are provided only with respect to the additional acts or circumstances set forth in subsections (3) through (6).

"[A] crime is made up of two parts, forbidden conduct and a prescribed penalty. The former without the latter is no crime." 1 Wayne R. LaFave, *Substantive Criminal Law* § 1.2 (2d ed.2003); *see Olinyk v. People,* 642 P.2d 490, 493 (Colo.1982) ("A criminal statute must include a penalty for committing the acts proscribed, and a criminal prohibition without a penalty is unenforceable.").

Here, because there is no penalty associated with only the acts identified in section 18–8–105(1), we conclude that subsection (1) does not set forth a "base offense" of accessory to crime. Instead, we conclude that subsection (1) operates in conjunction with subsections (3) through (6) to create four separate offenses of accessory to crime.

The result of our analysis: the prosecution proved an offense it did not charge; it charged an offense it did not prove; and the proof it provided would not sustain any lesser included offense of the charged offense. Under these circumstances, H.W.'s adjudication must be reversed, and the case must be remanded to the juvenile court with directions to enter a judgment of acquittal.

## II. Other Contentions

Because of the manner in which we have resolved this case, we need not address H.W.'s other contentions.

The judgment is reversed, and the case is remanded to the juvenile court with directions to enter a judgment of acquittal.

Judge LOEB and Judge MILLER concur.