Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 8, 2020

**2020 CO 49**

**No. 18SC144, *Campbell v. People*—Confrontation Clause—Constructive Amendment—Habitual Offender.**

The supreme court reviews whether the trial court plainly erred by permitting an expert to testify about a DNA profile developed by a non-testifying analyst.  The court holds that any error in allowing the expert to testify about the DNA profile was not plain at the time of trial or the time of appellate review.

The supreme court also reviews whether the prosecution constructively amended the habitual offender charge against the defendant by mislabeling one of the defendant's prior felony convictions in the charging document.  The court concludes that the prosecution adequately alleged the defendant was convicted of a specific felony and proved that prior conviction as alleged.  Accordingly, the supreme court concludes the mislabeled prior felony resulted in a simple variance that does not require reversal.

The court affirms the judgment of the court of appeals and remands the case with directions.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 49

### Supreme Court Case No. 18SC144
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1097

### Petitioner:

Brandon D. Campbell,

v.

### Respondent:

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
June 8, 2020

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Chelsea E. Mowrer, Deputy Public Defender
 *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Elizabeth Rohrbough, Senior Assistant Attorney General
 *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE GABRIEL** concurs in part and dissents in part, and **JUSTICE HOOD** and **JUSTICE HART** join in the partial concurrence and partial dissent.

¶1     During Brandon D. Campbell's trial for burglary, an expert from the Denver Crime Lab testified that a DNA sample taken from Campbell matched a DNA profile developed from a soda can found at the burglary scene as well as a profile developed from a partially eaten plum found at another residential burglary. The plum profile had been developed at an out-of-state lab; the technician who tested the plum did not testify. Although Campbell objected to evidence of the other burglary on CRE 404(b) grounds, he did not argue that allowing the Denver Crime Lab expert to testify about the plum profile violated his confrontation rights. The jury convicted Campbell of second degree burglary and first degree criminal trespass.[1]

¶2     The People also charged Campbell with three habitual offender counts. In its amended complaint, the prosecution identified one of Campbell's prior felony convictions by case number, jurisdiction, and date, but mislabeled the conviction in that case as "Possession of a Schedule IV Controlled Substance" when instead he had been convicted of felony trespass. At the habitual criminal hearing, the prosecution presented the records associated with the case number identified in the amended complaint and established that Campbell had been convicted of

_____

[1] The court of appeals vacated Campbell's separate conviction for theft; that conviction is not at issue here.

felony trespass. Although the defense acknowledged receiving the records in discovery and did not object to their admission, it argued that the prosecution constructively amended the charging document by failing to prove Campbell had been convicted of possession of a controlled substance as alleged in the amended complaint. The trial court found that, despite the mislabeled offense, Campbell had adequate notice of the charges. It therefore adjudicated Campbell a habitual offender.

¶3 Campbell appealed, arguing for the first time that the admission of the Denver Crime Lab expert's surrogate testimony about the plum DNA profile violated his confrontation rights. Campbell also renewed his contention that the trial court erroneously allowed the prosecution to constructively amend the habitual offender charge against him. The court of appeals rejected both contentions.

¶4 We granted Campbell's petition for a writ of certiorari to review his Confrontation Clause and constructive amendment claims.[2] We now hold that

---

[2] Specifically, we granted certiorari review on the following issues:

1. Whether the district court plainly erred when it allowed a DNA expert to give surrogate expert testimony about DNA profile results that she did not participate in testing.

(1) any error in allowing the Denver Crime Lab expert to testify about the plum DNA profile was not plain, and (2) the mislabeled offense in the habitual offender count did not result in a constructive amendment requiring reversal. Accordingly, we affirm the judgment of the court of appeals and remand with directions to return the case to the trial court for resentencing and correction of the mittimus in accordance with the court of appeals' decision.

## I. Facts and Procedural History

¶5 As the victim in this case returned home one night, he opened his garage door to discover a car that did not belong to him and several strangers in his garage. The victim's home had been ransacked, and approximately $30,000 in property had been taken. The burglars fled, and the victim could not identify them. As police searched the home for evidence, the victim found an opened soda can that had not been consumed by him or his family. A technician at the Denver Police Department Crime Laboratory analyzed a sample from the mouth of the can and created a DNA profile that was matched to Campbell's DNA profile in the Colorado Bureau of Investigation's CODIS database.

---

2. Whether the prosecution constructively amended the complaint when it charged a specific felony in a habitual offender count but introduced evidence of a different felony at the habitual offender hearing.

¶6 Campbell was arrested and charged with burglary, theft, and criminal trespass, along with three habitual criminal counts under section 18-1.3-801, C.R.S. (2019). The prosecution obtained another DNA sample from Campbell to confirm the CODIS match. After providing the sample, Campbell filed a "Request for Live Testimony from All Laboratory Employees and Technicians" under section 16-3-309(5), C.R.S. (2019), which requires the prosecution to call laboratory technicians if the defendant requests such testimony at least fourteen days before trial. Campbell's request sought testimony from "any employee or technician from the Colorado Bureau of Investigation or any employee of the Denver Police Department" involved in testing.

¶7 The DNA profile from the soda can was later matched to a DNA profile developed from a partially eaten plum discovered at the scene of another residential burglary. The plum evidence had been tested at a lab in Virginia, and the DNA profile was developed there.

¶8 The DNA analyst from the Denver Crime Lab then compared Campbell's DNA sample with the profiles developed from the soda can and the plum and determined that they all matched. The prosecution notified the defense of the testing and results. Campbell never filed an additional or amended request for live testimony requesting that the Virginia analyst testify. Instead, Campbell moved to exclude the evidence of the other burglary, including the plum DNA

profile, under CRE 404(b). The court denied the motion and allowed the prosecution to introduce evidence of the later burglary to show identity.

## A. Trial

¶9 At trial, the defense renewed its objection to the introduction of evidence from the later burglary on CRE 404(b) and due process grounds. The court overruled the objection and allowed the DNA analyst from the Denver Crime Lab to testify as an expert.

¶10 The expert explained that she developed the DNA profiles for the soda can sample and Campbell's sample, but did not participate in the Virginia lab's testing of the plum sample. She testified that Campbell's profile, the soda can profile, and the plum profile all matched.

¶11 On cross-examination, the expert acknowledged that DNA can be transferred and that it is not possible to determine when or how DNA was deposited on an object. She also conceded that both the soda can and plum samples tested negative for saliva and that she could not say the DNA came from Campbell's saliva, only that the DNA profile matched Campbell's.

¶12 During closing arguments, defense counsel did not dispute that it was Campbell's DNA on the soda can and the plum, but instead argued that the prosecution failed to prove that Campbell had deposited the DNA on either object

during the burglaries.  The jury ultimately convicted Campbell of second degree burglary, theft, and first degree criminal trespass.

## B. Habitual Offender Hearing

¶13 The matter then proceeded to a hearing on the habitual criminal charges. One of the habitual offender counts alleged that Campbell was convicted of a felony in case number 06CR3890 in Denver District Court on September 14, 2006, but mislabeled the conviction in that case as "Possession of a Schedule IV Controlled Substance."  In fact, Campbell's conviction in case number 06CR3890 was for felony trespass.

¶14 During the hearing on the habitual offender charges, the prosecution introduced into evidence the "pen pack"[3] corresponding to case number 06CR3890 that had been provided to the defense in discovery.  These records plainly reflected that Campbell's prior conviction associated with Denver District Court case number 06CR3890 concerned felony trespass, not possession of a controlled substance.

---

[3] By statute, the prosecution may submit authenticated copies of records of a defendant's prior felony convictions and incarcerations as prima facie evidence of the fact of the convictions and the defendant's identity. § 18-1.3-802, C.R.S. (2019). These records are commonly called a penitentiary packet, or "pen pack."

7

¶15    Defense counsel did not object to the admission of the pen pack. Instead, during closing, counsel argued that the prosecution failed to prove that Campbell had been convicted of possession of a controlled substance as alleged in the information. The parties and the court agreed this was "a notice issue." The trial court concluded that Campbell was not prejudiced by the variance because the prosecution alleged and proved that Campbell was convicted of "a felony." The court proceeded to adjudicate Campbell a habitual criminal, concluding that the prosecution had shown beyond a reasonable doubt that Campbell had sustained three prior felony convictions.

## C. Appeal

¶16    On appeal, Campbell argued that (1) allowing the Denver Crime Lab expert to testify about the plum profile violated his confrontation rights and (2) the prosecution constructively amended the habitual criminal charge by identifying the prior conviction in 06CR3890 as "Possession of a Schedule IV Controlled Substance" in the information but proving instead the prior conviction in that case was for felony trespass at the habitual criminal hearing. The court of appeals rejected both arguments. *People v. Campbell*, No. 14CA1097, ¶¶ 16, 64 (Feb. 1, 2018).

¶17    First, the division reasoned that Campbell failed to preserve the confrontation claim because his pretrial request for testimony referred only to personnel from the Colorado Bureau of Investigation and the Denver Police

8

Department, and he failed to object to the plum profile testimony on Confrontation Clause grounds in subsequent written objections or during trial. *Id.* at ¶ 18. Accordingly, the division reviewed the claim for plain error. *Id.* at ¶¶ 19–29. At the time of trial, no Colorado case had addressed the issue of expert testimony based on DNA profiles generated by non-testifying technicians. *Id.* at ¶ 22. And although the U.S. Supreme Court addressed the issue in *Williams v. Illinois*, 567 U.S. 50 (2012), the fractured decision failed to produce a test endorsed by a majority of the justices. *Campbell*, ¶¶ 22–25. Because no clear holding could be derived from the *Williams* decision, the division concluded that any error in admitting the expert testimony here was not so obvious that the trial court should have intervened absent a confrontation objection. *Id.* at ¶ 29. Thus, it concluded, any error was not plain. *Id.*

¶18 While Campbell's appeal was pending, a different division of the court of appeals held in *People v. Merritt*, 2014 COA 124, ¶ 2, 411 P.3d 102, 103, that testimony from an expert about an autopsy report prepared by someone else was testimonial. The *Campbell* division declined to consider whether the decision in *Merritt* rendered any error here obvious at the time of appellate review, concluding that the obviousness of an error is judged at the time of trial. *Campbell*, ¶ 27.

¶19     The division also rejected Campbell's argument that the specific underlying felony listed in the information is an essential element of the habitual offender charge such that any discrepancy between the felony listed and the felony proved at the habitual offender adjudication results in a constructive amendment requiring reversal. *Id.* at ¶¶ 64, 70–71. The division reasoned that "the essential element of a habitual charge is the fact of a felony conviction, not commission of a specific felony." *Id.* at ¶ 71. The court thus concluded that the discrepancy here was a simple variance, and that Campbell's substantial rights were not prejudiced because he had adequate notice. *Id.* at ¶¶ 71–72.

¶20     Finally, the division vacated Campbell's theft conviction[4] and remanded for resentencing and correction of the mittimus. *Id.* at ¶¶ 62, 74. The division affirmed the judgment and sentence in all other respects. *Id.* at ¶ 74. We granted certiorari review.

## II. Analysis

¶21     We first address Campbell's claim that the trial court committed plain error by allowing the Denver Crime Lab expert to testify about the DNA profile

---

[4] The division vacated Campbell's class 4 felony theft conviction because the legislature amended the theft statute while Campbell's case was pending. *Campbell*, ¶¶ 48–49. The division remanded the case with instructions for the trial court to enter a judgment of conviction for class 5 felony theft and resentence Campbell accordingly. *Id.* at ¶ 62. That issue is not before us.

10

developed from the plum without testimony from the analyst who actually tested the sample. We then turn to Campbell's claim that the discrepancy between the felony listed in the information as associated with case number 06CR3890 and the actual prior felony conviction associated with that case number proved at his habitual criminal adjudication amounted to a constructive amendment requiring reversal.

## A. DNA Expert Testimony

¶22 The U.S. and Colorado Constitutions guarantee criminal defendants the right to confront the witnesses against them. U.S. Const. amend. VI; Colo. Const. art. II, § 16.

¶23 In *Crawford v. Washington*, 541 U.S. 36 (2004), the U.S. Supreme Court interpreted this right to prohibit the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53–54, 59; *see also Marshall v. People*, 2013 CO 51, ¶ 15, 309 P.3d 943, 946. The question here is whether the expert testimony referencing the Virginia lab results was testimonial hearsay for purposes of the Confrontation Clause.[5]

---

[5] Because Campbell does not argue that Colorado's state constitutional provision requires a different analysis, we discuss only the federal Confrontation Clause.

11

¶24    Campbell argues that the Virginia lab results were testimonial because they were generated for a primarily evidentiary purpose (i.e., to establish identity in a later criminal proceeding) and that the Denver Crime Lab expert's testimony about the plum profile was hearsay because it was offered for its truth. *See Davis v. Washington*, 547 U.S. 813, 822 (2006) (holding that statements are testimonial when circumstances objectively indicate that the primary purpose of an interrogation is to establish events potentially relevant to later criminal prosecution); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309–10 (2009) (holding that analysts' affidavits reporting results of forensic analysis are testimonial statements for purposes of the Confrontation Clause). The People respond that the results were not testimonial under the U.S. Supreme Court's more recent decision in *Williams*; they further argue that the lab results were not hearsay under CRE 703 because they were not offered for their truth but rather as a basis for the Denver Crime Lab expert's testimony.

¶25    Because Campbell did not object to this testimony on Confrontation Clause grounds at trial, we review his claim for plain error.[6] *See People v. Vigil*, 127 P.3d

---

[6] Campbell argues that he preserved his confrontation objection by filing the request for live testimony. We disagree and, in fact, denied certiorari review on this issue.

916, 929 (Colo. 2006). Plain error review addresses obvious and substantial errors that undermine the fundamental fairness of the trial such that they cast serious doubt on the reliability of the conviction. *Scott v. People*, 2017 CO 16, ¶ 15, 390 P.3d 832, 835. Plain errors must be so obvious that trial judges should be able to avoid them without the benefit of an objection. *Id.* at ¶ 16, 390 P.3d at 835. For an error to be obvious, it must contravene clear statutory prescription, a well-settled legal principle, or established Colorado case law. *Id.*

¶26 Campbell contends that the error in the admission of the expert's testimony was obvious at the time of trial because his request for live testimony put the trial court on notice of the confrontation issue. He further argues that the plainness of any error should be judged from the time of appellate review, urging this court to adopt the rule in *Henderson v. United States*, 568 U.S. 266, 273 (2013) (interpreting Federal Rule of Criminal Procedure 52(b)'s use of the phrase "plain error" to apply at the time of appellate review). Campbell maintains that the court of appeals' decision in *Merritt*—issued while Campbell's appeal was pending—rendered the error plain at the time of Campbell's appeal.

¶27 We first explain that any error was not plain at the time of trial. Next, we determine that we need not reach the question of whether to adopt the *Henderson* rule because the court of appeals' decision in *Merritt* did not render any error here

plain at the time of appellate review either. Because any error was not plain, reversal is not required.

## 1. Any Error Was Not Plain at the Time of Trial.

¶28 Generally speaking, scientific reports created for the purpose of establishing or proving a fact in a criminal trial are testimonial. *Melendez-Diaz*, 557 U.S. at 311, 329; *Hinojos-Mendoza v. People*, 169 P.3d 662, 667 (Colo. 2007). To admit such a report as evidence at trial, a person involved in the preparation of the report, rather than a surrogate witness who did not participate in the testing, must be called to testify. *Bullcoming v. New Mexico*, 564 U.S. 647, 652 (2011); *Marshall*, ¶¶ 17–20, 309 P.3d at 946–48.

¶29 At the time of Campbell's trial, the U.S. Supreme Court had narrowly held in *Williams v. Illinois* that expert testimony about a DNA profile generated by a non-testifying technician did not violate the Confrontation Clause. 567 U.S. at 57–58. But the case resulted in a fractured plurality ruling, generating four separate opinions and no majority rationale.

¶30 During the criminal investigation in *Williams*, law enforcement sent evidence to be tested by Cellmark, an external lab. *Id.* at 59. Cellmark generated a DNA profile based on that evidence. *Id.* Rather than call a Cellmark technician to testify, prosecutors called an expert unaffiliated with Cellmark to testify—based on the Cellmark report—that the DNA profile produced by the outside lab

14

matched the defendant's. *Id.* at 59–61. The trial court admitted the testimony over the defendant's Confrontation Clause objection. *Id.* at 62–64.

¶31 In the plurality opinion, Justice Alito, joined by Chief Justice Roberts and Justices Kennedy and Breyer, concluded that the expert's testimony about the DNA profile did not violate the Confrontation Clause. *Id.* at 55, 57–58. First, the plurality reasoned that such out-of-court statements may be relayed by an expert who is merely explaining the basis of her opinion but is not offering the results for their truth.[7] *Id.* at 57–58. As a second, independent basis for its decision, the plurality reasoned that even if the Cellmark report itself had been admitted into evidence, there would have been no Confrontation Clause violation because Cellmark created the report for the primary purpose of identifying a suspect, rather than inculpating the defendant, whom law enforcement had not yet identified. *Id.* at 84–85.

¶32 Justice Breyer joined the plurality in full, but wrote separately to emphasize that he would have set the case for reargument to answer the broader question of how "the Confrontation Clause appl[ies] to the panoply of crime laboratory

---

[7] The plurality observed that the case involved a bench trial; had Williams been tried by a jury, the same testimony could not have been admitted without "an evaluation of the risk of juror confusion and careful jury instructions." *Id.* at 72.

15

reports and underlying technical statements written by (or otherwise made by) laboratory technicians." *Id.* at 86 (Breyer, J., concurring).

¶33 Justice Thomas concurred in the judgment but expressly rejected the plurality's analysis. *Id.* at 103–04 (Thomas, J., concurring in the judgment). He agreed with the dissent that the out-of-court statements were admitted for their truth and were therefore hearsay. *Id.* at 104, 110. But Justice Thomas also reasoned that Cellmark's statements lacked the necessary formality and solemnity to qualify as testimonial for Confrontation Clause purposes. *Id.* at 103, 110–12.

¶34 Justice Kagan, joined by Justices Scalia, Ginsburg, and Sotomayor, dissented, lamenting that the "clear rule" from *Melendez-Diaz* and *Bullcoming* "is clear no longer." *Id.* at 118, 141 (Kagan, J., dissenting). Justice Kagan argued that under *Melendez-Diaz* and *Bullcoming*, the Cellmark DNA profile was both testimonial and offered for its truth; thus, the expert's testimony about the DNA profile violated Williams's rights under the Confrontation Clause. *Id.* at 118–41. In sum, Justice Kagan opined that although the law had been clear under *Melendez-Diaz* and *Bullcoming*, the plurality decision in *Williams* "left significant confusion in [its] wake." *Id.* at 141.

¶35 Since the fractured decision in *Williams*, state and federal courts have struggled to discern a clear test for the admission of expert testimony relying on DNA test results performed by a non-testifying analyst. *E.g.*, *United States v. Pablo*,

16

696 F.3d 1280, 1293 (10th Cir. 2012) (holding that any error in admitting expert testimony was not plain in part because it "is a nuanced legal issue without clearly established bright line parameters, particularly in light of the discordant . . . divide of opinions in *Williams*").[8]

¶36     Here, as in *Williams*, local law enforcement outsourced DNA testing and an expert then testified relying on the results of testing performed by someone else. But the defense here failed to object to the admission of such testimony on Confrontation Clause grounds. Given the absence of clear guidance in *Williams*, any error here was not so obvious that the trial judge should have identified it without the benefit of an objection. Indeed, five Justices in *Williams* agreed, albeit

---

[8] *See also, e.g.*, *United States v. Maxwell*, 724 F.3d 724, 727 (7th Cir. 2013) ("[*Williams*] left no clear guidance about how exactly an expert must phrase its testimony about the results of testing performed by another analyst in order for the testimony to be admissible."); *State v. Walker*, 212 A.3d 1244, 1260 (Conn. 2019) ("[C]ourts have struggled to determine the effect of *Williams*, if any, on the legal principles governing confrontation clause claims."); *Jenkins v. United States*, 75 A.3d 174, 176 (D.C. 2013) ("[T]he splintered decision in *Williams*, which failed to produce a common view shared by at least five Justices, creates no new rule of law that we can apply in this case."); *State v. Norton*, 117 A.3d 1055, 1069 (Md. 2015) ("[M]any other courts also have struggled to interpret *Williams* and apply its tenets."); *Commonwealth v. Tassone*, 11 N.E.3d 67, 71 n.1 (Mass. 2014) ("In the wake of the fractured plurality decision in [*Williams*], courts have struggled to find any such common denominator that may constitute its holding."); *State v. Dotson*, 450 S.W.3d 1, 68 (Tenn. 2014) ("The Supreme Court's fractured decision in *Williams* provides little guidance and is of uncertain precedential value because no rationale . . . garnered the support of a majority of the Court.").

for different reasons, that the admission of such testimony did not violate the Confrontation Clause. Thus, we cannot say that any error was plain at the time of trial.

## 2. *Merritt* Did Not Render Any Error Here Plain.

¶37 Campbell argues in the alternative that the error in admitting the expert's testimony was obvious at the time of his appeal given the court of appeals' ruling in *Merritt*. *See Merritt*, ¶ 49, 411 P.3d at 109. Campbell urges this court to adopt the rule in *Henderson*, in which the U.S. Supreme Court held that under Federal Rule of Criminal Procedure 52(b), courts must evaluate whether an error is plain at the time of appellate review, not the time of trial. 568 U.S. at 277.

¶38 We need not decide whether to adopt the rule in *Henderson* because we conclude that any error here was not plain, even under *Merritt*.

¶39 In *Merritt*, the division addressed whether expert testimony about an autopsy report prepared by another person should have been excluded as testimonial hearsay. ¶ 2, 411 P.3d at 103. To determine whether the report was testimonial, the division looked to the purpose for which it was made. *Id.* at ¶ 44, 411 P.3d at 108. It observed that "[c]oroners perform autopsies for a variety of reasons," including determining the manner of death for the police, insurance companies, tort lawyers, and decedents' families. *Id.* at ¶ 43, 411 P.3d at 108. Even within the context of a criminal investigation, autopsies are performed for

18

purposes as varied as identifying and ruling out causes of death, building a case against an individual, and discovering information that may inculpate or exculpate a particular individual such as time of death, type of murder weapon, or information about the killer including height, dominant hand, and physical strength. *Id.* Given the varied reasons for which an autopsy report may be prepared, the division concluded that whether an autopsy report is testimonial is a fact-specific inquiry. *Id.* at ¶ 44, 411 P.3d at 108.

¶40 Reasoning that *Williams* provided no clear guidance on the issue, the division concluded that the autopsy report was testimonial because it was created primarily for the purpose of gathering evidence to be used in a future criminal prosecution. *Id.* at ¶¶ 45–49, 411 P.3d at 108–09; *see also Davis*, 547 U.S. at 822 (articulating the primary purpose test); *Hinojos-Mendoza*, 169 P.3d at 667 (holding that a report was testimonial because its sole purpose was to analyze a substance in anticipation of criminal prosecution). Because the autopsy report itself was not admitted at trial, the division explained that some of the expert's statements may have been based on the report and thus may have been testimonial hearsay, other statements were not, and still others were testimonial hearsay invited by defense counsel. *Id.* at ¶¶ 50–59, 411 P.3d at 109–10. The division ultimately concluded that the admission of the expert's testimony was harmless beyond a reasonable doubt. *Id.* at ¶ 60, 411 P.3d at 110.

19

¶41 Even setting aside the fact that one division of the court of appeals is not bound by another division, *People v. Smoots*, 2013 COA 152, ¶ 21, 396 P.3d 53, 57, the opinion in *Merritt* did not render any Confrontation Clause error obvious here. *Merritt* addressed issues unique to autopsy reports and did not purport to set out a broad rule for other types of testing, evidence, or reports. Moreover, it is unclear from the record here why the plum was sent to the Virginia lab, including whether it was to identify the burglar or build a case specifically against Campbell. While one could argue the similarities between this case and *Merritt*, we cannot say a judge would be expected to recognize those similarities without the benefit of an objection. Because *Merritt* did not render any error here obvious, we decline to decide whether to adopt *Henderson* and continue to leave that question open. *See Howard-Walker v. People*, 2019 CO 69, ¶ 5, 443 P.3d 1007, 1008–09; *Garcia v. People*, 2019 CO 64, ¶ 28, 445 P.3d 1065, 1070.

¶42 Accordingly, because any error was not plain, reversal is not required.

## B. Habitual Offender Count

¶43 Campbell argues that the discrepancy between the felony identified in the habitual offender count as associated with case number 06CR3890 and the actual prior felony conviction associated with that case number proved at his habitual offender hearing amounted to a constructive amendment requiring reversal. On the facts here, we disagree.

20

¶44 "An information is sufficient if it advises the defendant of the charges he is facing so that he can adequately defend himself and be protected from further prosecution for the same offense." *Cervantes v. People*, 715 P.2d 783, 785 (Colo. 1986) (quoting *People v. Albo*, 575 P.2d 427, 429 (Colo. 1978)). "The notice given to a defendant of the charges against him should be sufficient to ensure that he is not taken by surprise by the evidence offered at trial." *Id.*

¶45 A variance occurs when the charge contained in the charging instrument differs from the charge for which a defendant is convicted. *People v. Rodriguez*, 914 P.2d 230, 257 (Colo. 1996). Colorado law recognizes two types of variances. A simple variance "occurs when the evidence presented at trial proves facts materially different from those alleged in the charging document." *People v. Smith*, 2018 CO 33, ¶ 25, 416 P.3d 886, 892. A simple variance generally does not require reversal as long as the proof upon which the conviction is based corresponds to an offense that was clearly set out in the charging instrument. *Rodriguez*, 914 P.2d at 257. By contrast, a constructive amendment occurs when the variance "changes an essential element of the charged offense." *People v. Rediger*, 2018 CO 32, ¶ 48, 416 P.3d 893, 903 (quoting *Rodriguez*, 914 P.2d at 257). Even then, "[n]o indictment, information, felony complaint, or complaint shall be deemed insufficient nor shall the trial, judgment, or other proceedings thereon be reversed or affected by any defect which does not tend to prejudice the substantial rights of the defendant on

21

the merits." § 16-10-202, C.R.S. (2019); *see also* Crim. P. 7(e) (permitting amendments to an information as to form any time before the verdict or finding if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced).

¶46 Campbell argues that the prosecution's failure to prove the specific prior felony conviction listed in the information resulted in a constructive amendment of the habitual criminal count, requiring reversal. Although we agree that the habitual criminal statute requires proof of a specific prior felony conviction, we conclude that here, the prosecution adequately alleged that Campbell was convicted of a specific felony; namely, a conviction in Denver District Court case number 06CR3890. Because the prosecution proved that prior felony conviction as alleged in the information, the variance here was a simple variance that did not prejudice Campbell's substantial rights.

### 1. The Habitual Criminal Statute Requires Proof of a Specific Felony Conviction.

¶47 The habitual criminal statute does not establish a substantive offense but instead provides for increased penalties for repeat offenders based on a defendant's previous convictions. Under section 18-1.3-801(2)(a)(I), a person convicted of any felony who has been three times previously convicted "of a felony" shall be adjudged a habitual criminal and shall be sentenced to four times the maximum presumptive range. *Id.* Section 18-1.3-803, C.R.S. (2019), establishes

22

the procedures for habitual offender proceedings. That provision requires that an information seeking the increased penalties authorized under section 18-1.3-801 "shall allege that the defendant *on a date* and *at a place specified* was convicted of a *specific felony*." § 18-1.3-803(2) (emphases added). The prosecution bears the burden to prove beyond a reasonable doubt "that the defendant has been previously convicted *as alleged*." § 18-1.3-803(4)(b) (emphasis added).

¶48    The court of appeals concluded that "the essential element of a habitual charge is the fact of a felony conviction, not commission of a specific felony." *Campbell*, ¶ 71. On this point, we disagree. Based on the plain language of sections 18-1.3-801 and -803, we conclude that adjudication as a habitual offender requires proof of a specific prior felony conviction.

¶49    In general, a charging instrument serves the constitutional purpose of providing a defendant with notice of the charges against him.[9] *People v. Williams*,

---

[9] A charging instrument also serves to protect a defendant from double jeopardy. *People v. Williams*, 984 P.2d 56, 60 (Colo. 1999). That is, a charging instrument must be sufficient to allow a defendant "to plead the judgment to bar further prosecutions for the same offense." *People v. Moody*, 674 P.2d 366, 370 (Colo. 1984) (Lohr, J., dissenting). But these double jeopardy principles are less salient in the habitual offender context because "habitual offender" is a status, not an offense. *See People v. Porter*, 2015 CO 34, ¶ 30, 348 P.3d 922, 928–29. Accordingly, our analysis here focuses on the charging instrument's purpose of providing a defendant with notice.

984 P.2d 56, 60 (Colo. 1999); *see also People v. Moody*, 674 P.2d 366, 370 (Colo. 1984) (Lohr, J., dissenting). The statutory requirements for charging a defendant as a habitual offender serve a similar purpose. Defenses to a habitual offender charge can include challenges to the defendant's identity, *see Brown v. People*, 238 P.2d 847, 850 (Colo. 1951), and whether the underlying conviction was constitutionally obtained, *see Lacy v. People*, 775 P.2d 1, 6 (Colo. 1989). If the prosecution were allowed to merely allege that the defendant was previously convicted of three felonies without identifying the specific convictions, a defendant could not prepare such defenses. The same due process concerns would arise if, in the midst of the habitual criminal hearing, the prosecution was permitted to substitute a different felony conviction for the one charged in the information. Therefore, we conclude that the habitual criminal statute requires the prosecution to allege and prove a specific prior felony conviction.

## 2. The Discrepancy Here Was a Simple Variance, Not a Constructive Amendment.

¶50    Here, we conclude that the information adequately alleged that Campbell was previously convicted of a specific felony by identifying the prior conviction's case number, jurisdiction, and date.

¶51    To reiterate, the habitual offender statute does not itself establish a substantive offense. When proving beyond a reasonable doubt under section 18-1.3-803(4)(b) that the defendant has been "previously convicted," the

24

prosecution need not re-establish the elements of that underlying offense. Rather, for purposes of establishing that the defendant is a habitual criminal and subject to enhanced penalties, the prosecution need only establish the fact of the prior conviction.

¶52 As noted, the information in this case alleged Campbell was convicted of a felony in case number 06CR3890 in Denver District Court on September 14, 2006, but mistakenly identified the felony associated with that case number as "Possession of a Schedule IV Controlled Substance" when in fact the conviction in 06CR3890 was for felony trespass.[10]

¶53 At trial, relying on the pen pack documents associated with case number 06CR3890, the prosecution proved beyond a reasonable doubt that Campbell had been convicted of a felony in that case; namely, criminal trespass. Thus, the evidence at trial established proof of the prior felony conviction in Denver District Court case number 06CR3890, as alleged in the charging instrument. *See Rodriguez*, 914 P.2d at 257. Because the prosecution proved the prior felony conviction associated with the case number, jurisdiction, and date alleged in the information, the discrepancy between the felony offense listed in the information (possession

---

[10] Notably, case number 06CR3890 concerned only one felony conviction.

25

of controlled substance) and the actual conviction in that case (felony trespass) was a simple variance, not a constructive amendment. The information put Campbell on notice that he was alleged to have been convicted of a felony in Denver District Court case number 06CR3890; the prosecution proved at the hearing that he was, in fact, convicted of felony trespass in that case. Because the prosecution proved the prior felony conviction in case number 06CR3890 as alleged in the information, the variance here was a simple variance that did not prejudice Campbell's substantial rights.

¶54 Campbell does not claim any prejudice to his substantial rights with regard to the error in the information. The pen pack materials presented at trial were provided to the defense in discovery. These documents plainly revealed that the felony conviction associated with case number 06CR3890 concerned felony trespass, not drug possession. In fact, the record suggests that defense counsel was well aware of the discrepancy. Campbell therefore had actual notice that the felony conviction associated with case number 06CR3890 concerned felony trespass. *See Moody*, 674 P.2d at 370–71 (Lohr, J., dissenting) ("If the defendant is aware of a defect in the charge before trial, this reflects on whether he is prejudiced by it."). He does not argue how he would have challenged the prosecution's case differently had the information properly labeled the nature of the offense. *See People v. Pahl*, 169 P.3d 169, 178 (Colo. App. 2006) (holding that a simple variance

26

did not affect defendant's substantial rights where "defendant [did] not complain he was unaware of the essential facts[,] . . . argue he would have challenged the prosecution's case differently, [or] indicate he could have produced different evidence in his defense"). In short, he has not alleged or demonstrated that he was prejudiced by the discrepancy between the felony mistakenly identified in the information as associated with case number 06CR3890 and the prior felony conviction associated with that case number established at the habitual criminal hearing.

¶55 Accordingly, we conclude that the variance here was not a constructive amendment, but rather, a simple variance that did not prejudice Campbell's substantial rights.

### III. Conclusion

¶56 We affirm the judgment of the court of appeals and remand with directions to return the case to the trial court for resentencing and correction of the mittimus in accordance with the court of appeals' decision.

**JUSTICE GABRIEL** concurs in part and dissents in part, and **JUSTICE HOOD** and **JUSTICE HART** join in the partial concurrence and partial dissent.

JUSTICE GABRIEL, concurring in part and dissenting in part.

¶57    I agree with the majority's conclusion that the trial court did not plainly err in admitting the expert testimony regarding the DNA testing on the plum. Maj. op. ¶¶ 4, 28–42. I disagree, however, with the majority's conclusion that, as to added count six of the complaint and information, which was one of the habitual criminal counts, the prosecution's proof amounted to a simple variance that was not prejudicial. *Id.* at ¶¶ 43–55. In that count, the prosecution offered proof of a prior conviction for criminal trespass when it charged a prior conviction for possession of a schedule IV controlled substance. In my view, the pertinent statutes make clear that the specific prior conviction is an essential element of the habitual criminal charge, and because I do not agree that the prosecution charged the criminal trespass that it ultimately proved, I believe that the circumstances here established a constructive amendment of the charging instrument and that reversal is therefore required.

¶58    I thus respectfully concur in part with and dissent in part from the majority's opinion.

## I.  Factual Background

¶59    The material facts are not disputed. In count six, the prosecution alleged that on September 14, 2006, Campbell was convicted in Denver District Court Case No. 06CR3890 of possession of a schedule IV controlled substance.

1

¶60     Notwithstanding what it charged in that count, at the habitual criminal trial, the prosecution did not prove that Campbell had previously been convicted of possession of a schedule IV controlled substance. Instead, it proved that he had previously been convicted of criminal trespass.

¶61     At the close of the evidence, Campbell argued that the prosecution had presented no evidence that he had a prior conviction for possession of a schedule IV controlled substance, as the prosecution had alleged, and therefore he was entitled to judgment on count six. The prosecution did not deny its lack of proof of a prior drug possession conviction but responded that the issue was one of notice because the mittimus and pen pack that it had introduced into evidence showed that the case number associated with count six actually involved a criminal trespass conviction. The prosecution further argued that Campbell was on notice of the true nature of the crime at issue because the discovery that he had received revealed the actual conviction, as opposed to what the prosecution had alleged in the charging instrument.

¶62     The trial court found that the prosecution had, in fact, charged a prior conviction for possession of a schedule IV controlled substance but then proved a prior conviction for criminal trespass. The court concluded, however, that the prosecution was not required to prove the specific felony that it had alleged. Rather, the prosecution needed only to prove "a felony." Moreover, the court

agreed with the prosecution that its failure to prove the specific felony charged was a notice issue and that, on the facts of this case, Campbell had suffered no prejudice.

¶63 The question now before us is whether this variance in proof amounted to a constructive amendment requiring reversal, or whether it was a simple variance that was amenable to a prejudice analysis. Unlike the majority, I believe it was a constructive amendment.

## II. Analysis

¶64 I begin by setting forth the applicable statutory provisions. I then discuss the distinctions between constructive amendments and simple variances. I end my analysis by applying the foregoing law to the facts of this case, and I conclude that this case involved a constructive amendment that requires reversal.

## A. Applicable Legal Principles

¶65 Section 18-1.3-801(2)(a)(1), C.R.S. (2019), provides for increased penalties for habitual criminals who have been convicted of "a felony" on three prior occasions.

¶66 Section 18-1.3-803, C.R.S. (2019), in turn, provides, in pertinent part:

> (2) An information or indictment seeking the increased penalties authorized by section 18-1.3-801 shall identify by separate counts each alleged former conviction *and shall allege that the defendant on a date and at a place specified was convicted of a specific felony*. If any such conviction was had outside this state, the information or indictment shall allege that the offense, if committed in this state, would be a felony.

3

. . . .

(4) If the defendant denies that he or she has been previously convicted as alleged in any count of an information or indictment, the trial judge, or a replacement judge as provided in subsection (1) of this section, shall determine by separate hearing and verdict whether the defendant has been convicted *as alleged*.

(Emphases added.)

¶67 Our case law has recognized two types of variances between the charge contained in a charging instrument and the charge for which a defendant is convicted. *People v. Rodriguez*, 914 P.2d 230, 257 (Colo. 1996). A simple variance occurs when the terms of the charge are unchanged but the evidence at trial establishes facts that are materially different from those alleged in the charging instrument. *Id.* A constructive amendment, in contrast, changes an essential element of the charged offense, thereby altering the substance of the charging instrument. *Id.*

¶68 In the case of a simple variance, a court will generally sustain the conviction as long as the proof on which it was based corresponds to an offense that was charged in the charging instrument. *Id.* The question is one of prejudice, for, as our legislature has provided, "No indictment, information, felony complaint, or complaint shall be deemed insufficient nor shall the trial, judgment, or other proceedings thereon be reversed or affected by any defect which does not tend to

4

prejudice the substantial rights of the defendant on the merits." § 16-10-202, C.R.S. (2019).

¶69 A constructive amendment, however, requires reversal because our constitution prohibits amendments that effectively subject a defendant to the risk of conviction for an offense that was not charged in the charging instrument. *Rodriguez*, 914 P.2d at 257; *see also People in Interest of H.W.*, 226 P.3d 1134, 1137 (Colo. App. 2009) ("Unlike simple variances, constructive amendments effectively subject a defendant to the risk of conviction for an offense that was not originally charged in the charging instrument. Consequently, constructive amendments are per se reversible error, whereas simple variances are not reversible unless they prejudice a defendant's substantive rights.") (citations omitted).

### B. Constructive Amendment

¶70 Applying the foregoing principles here, I would conclude that the facts of this case established a constructive amendment, not a simple variance. As noted above, section 18-1.3-803(2) requires the prosecution to allege that the defendant on a date and at a place specified was convicted of "a specific felony." Moreover, section 18-1.3-803(4) requires the court to determine, at a separate hearing, whether the defendant has been convicted "as alleged."

¶71 In my view, this statutory language makes clear that the specific felony underlying the habitual criminal count at issue is an essential element of that

count. If, as the People contend and the majority at least implicitly opines, it were not, then the language of sections 18-1.3-803(2) and (4) would be meaningless. We, however, may not construe a statute so as to render any of its terms meaningless. *See Doubleday v. People*, 2016 CO 3, ¶ 20, 364 P.3d 193, 196 (noting that we read the statutory scheme as a whole, "giving consistent, harmonious, and sensible effect to all of its parts").

¶72 Because I believe that the allegation of a specific felony is an essential element of a habitual criminal count, I would conclude that the prosecution's proof in this case of a different felony from the one that it specifically charged, by name, in the complaint and information constituted a constructive amendment and therefore requires reversal. *See Rodriguez*, 914 P.2d at 257; *H.W.*, 226 P.3d at 1137.

¶73 Our decision in *Casadas v. People*, 304 P.2d 626 (Colo. 1956), which has been on the books for over six decades, is substantially on point. In *Casadas*, the defendant was charged with the crime of conspiracy to commit "fictitious check" and the charging instrument purported to cite the pertinent statute. *Id.* at 627. The cited statute, however, had "nothing to do with checks," and the prosecution introduced no evidence that "tended in the least to prove any offense" defined by the cited statute. *Id.* As a result, at the conclusion of the evidence, the defendant moved for a directed verdict of not guilty. *Id.* The trial court, however, denied that motion and granted the prosecution leave to amend the charged count to

6

conform to the evidence, although we noted that no amendment was ever made. *Id.*[1] The defendant was then convicted of the crime of conspiracy to commit "fictitious check," not the crime identified by statutory citation in the charging instrument. *Id.*

¶74 The defendant appealed, and we reversed the judgment, concluding that the defendant's motion for a directed verdict should have been sustained. *Id.* at 628. In so concluding, we first stated, "Where a count of an information in a criminal case identifies with particularity the exact section of the statute upon which a prosecution is based, as in the instant case, no other statute can be substituted for the one actually selected as forming the subject matter of the prosecution." *Id.*

¶75 We then said:

> An accused person is entitled to be tried on the specific charge contained in the information, and after a plea of not guilty has been entered and the people have submitted all the evidence which the prosecutor desires to present to sustain that charge, no amendment can be made thereto which changes entirely the substance of the crime which defendant is alleged to have committed. This is exactly what the trial court undertook to do in this case by granting leave [to amend].

*Id.*

---

[1] We further noted, "By this statement we do not mean to infer that under the circumstances here present such amendment could have been made." *Id.*

7

¶76 Here, as in *Casadas*, the prosecution charged a specific crime and then provided additional identifying information that was inconsistent with the crime specified. *Id.* at 627. Likewise, here, as in *Casadas*, at the conclusion of the prosecution's case, the defendant requested the entry of judgment in his favor, arguing that the prosecution had not proved the crime that it had specifically alleged, but the trial court denied that motion, rejecting the defendant's assertion that the prosecution was bound by the crime charged. *Id.* These facts led us to conclude in *Casadas* that the defendant was entitled to be tried on the specific charge contained in the information and that the prosecution could not amend the charges after the close of the evidence to change the substance of the crime that the defendant was alleged to have committed. *Id.* at 628. In my view, we should reach the same result here. Campbell had every right to rely on the specific crime that the prosecution charged, particularly given that the prosecution was statutorily required to allege the specific crime at issue and it only identified one specific crime. Moreover, for the reasons set forth in *Casadas*, the prosecution should not be permitted to remedy such an error by amending the charging instrument after it has rested its case.

¶77 For several reasons, I am unpersuaded by the People's assertion that it was sufficient for the prosecution to allege the case number in which Campbell was previously convicted and that any error regarding the prior conviction at issue

8

should be deemed to have been resolved in the discovery process. Nor can I agree with the majority's view that citing a case number, jurisdiction, and date of a prior proceeding is sufficient to charge a defendant with the felony at issue therein, notwithstanding the fact that the complaint and information specified, by name, a different felony. Maj. op. ¶ 50.

¶78 First, I do not believe that we demand too much by requiring the prosecution to charge the correct underlying conviction (and, if it did not do so, to amend its charge on a timely basis). This is particularly true here, where the prosecution is seeking increased penalties pursuant to a statutory scheme that expressly required it to allege the specific felony underlying the habitual criminal count at issue. *See* § 18-1.3-803(2).

¶79 Second, I respectfully disagree with the majority's view that citing a case number, jurisdiction, and date of a prior felony satisfies the statutory requirement that the prosecution allege the specific felony underlying the habitual criminal count that it intends to prove. *See id.* The statute does not require merely that the complaint and information allege sufficient information to allow a defendant to determine the underlying felony. Nor does the statute say that it is sufficient for the prosecution to allege and prove a prior felony "associated with" an identified case number, jurisdiction, and date, as the majority asserts. Maj. op. ¶ 52. The statute expressly requires the prosecution to allege the specific felony. Under the

9

majority's reasoning, however, the prosecution need not allege any specific felony at all. It need only allege a case number, jurisdiction, and date of a prior proceeding. But that is not what section 18-1.3-803(2) says, and we are not at liberty to ignore or rewrite a statutory mandate.

¶80 Third, I am unpersuaded by the People's (and the majority's) apparent premise that Campbell should have been able to discern the correct underlying conviction based on the cited case number. Besides the above-noted fact that section 18-1.3-803(2) requires more than this, the People's and the majority's premise presumes that Campbell would have assumed that the case number was correct and that the specifically identified crime was incorrect. I, however, perceive no basis for such an assumption. Indeed, given that section 18-1.3-803(2) requires the prosecution to allege the specific felony and not a specific case number, the more appropriate presumption would seem to be that the identified conviction was correct and that the case number was incorrect.

¶81 Finally, I cannot agree with a rule that allows a court to overlook the fact that the prosecution pleaded the wrong charge and did not timely correct its error, based on a theory that the discovery process would have remedied the error. Such a rule would undermine the due process principles requiring the prosecution to allege in the charging instrument what it intends to prove because what the prosecution charges will no longer matter. A conviction will be upheld as long as

10

the prosecution can point to something in discovery suggesting that the defendant had notice of what the prosecution ultimately proved, regardless of what the prosecution had charged. Moreover, under such a rule, most, if not all, constructive amendments would morph from questions of due process and proper pleading into questions of prejudice, thereby effectively eliminating any distinction between constructive amendments and simple variances and overturning decades of settled case law in the process. With respect, I cannot abide such a result.

## III. Conclusion

¶82 Today, the majority adopts a rule that effectively allows prosecutors to convict defendants on charges different from those specifically alleged, by name, in the charging instruments. Although this rule is announced in a case involving a habitual criminal count, I do not see why the rule would be limited to this context. Instead, it would appear to apply to any charged crime and, thus, would seem to allow the prosecution in any case to convict a defendant of a charge other than one expressly alleged in a charging instrument, as long as the defendant can be said to have been given notice, either elsewhere in the charging instrument or in discovery, of what the prosecution ultimately proved. Because I believe that such a rule would violate a defendant's right to due process, I cannot subscribe to it.

¶83 For these reasons, I would conclude that when, in connection with habitual criminal counts, the prosecution charges a prior conviction of a specifically identified felony but then proceeds to prove a different felony without timely amending the charging instrument, the prosecution has constructively amended that charging instrument and reversal is required. Accordingly, I would reverse the judgment of conviction on count six and remand this case for further proceedings.

¶84 To this extent, I respectfully dissent from the majority's opinion.

I am authorized to state that JUSTICE HOOD and JUSTICE HART join in this concurrence in part and dissent in part.