22CA0139 Peo v Shewfelt 03-27-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0139
Eagle County District Court No. 20CR13
Honorable Paul R. Dunkelman, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Curtis Dean Shewfelt,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Taylor J. Hoy, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Curtis Dean Shewfelt appeals the judgment of conviction entered on jury verdicts finding him guilty of possession with intent to distribute heroin and conspiracy to distribute heroin.  We affirm the judgment.

## I.     Background

¶ 2     Early one morning, police officers received a report of a pickup truck swerving in and out of its lane on the highway.  Holiday Sanchez was driving the truck, with Shewfelt in the front passenger seat.  An officer spotted the vehicle and attempted to initiate a traffic stop, but Sanchez did not pull over.  The officer pursued the truck until it crashed.  After the crash, Sanchez attempted to flee on foot but was captured.  Meanwhile, Shewfelt remained inside the truck and cooperated with the police.

¶ 3     Police officers found drug paraphernalia, a little over half an ounce of heroin, and two cell phones in the truck.  Detectives later extracted text messages from one of the phones and determined that the phone belonged to Shewfelt.  Text messages sent by Shewfelt suggested that he and Sanchez were on their way to deliver "a half," meaning half an ounce of heroin, to a buyer.  Meanwhile, text messages sent by the buyer, Samuel Fightlin,

suggested that he planned to resell that heroin to others upon receiving it.

¶ 4     Shewfelt was charged with possession with intent to distribute a controlled substance and conspiracy to distribute a controlled substance. During Shewfelt's trial, the district court admitted the text messages that Shewfelt sent to Fightlin as admissions against interest. But the court ruled that the messages Fightlin sent Shewfelt could be "admitted only to give context to Mr. Shewfelt's [text messages] and . . . not . . . as substantive evidence." The court gave this limiting instruction to the jury when the statements were admitted and again in the final jury instructions.

¶ 5     The jury found Shewfelt guilty as charged.

## II.     Analysis

¶ 6     Shewfelt contends that (1) there is insufficient evidence to support the conspiracy conviction; (2) the evidence presented at trial created a prejudicial variance and violated his right to a unanimous verdict; (3) the district court abused its discretion by admitting Fightlin's text messages; (4) the district court abused its discretion by allowing expert testimony to be presented as lay

2

opinion; and (5) the cumulative effect of these errors denied him a fair trial.

¶ 7    We begin by discussing the scope of the conspiracy for which Shewfelt was charged because it bears on nearly every issue in this appeal. We then address and reject each of his contentions in turn.

### A.    The Scope of the Conspiracy Charge

¶ 8    Shewfelt was arrested while on his way to deliver heroin to Fightlin, who in turn was planning on reselling the heroin to others. The complaint alleged that "Curtis Dean Shewfelt unlawfully, feloniously, and knowingly conspired with Holiday Sanchez, and a person or persons to the District Attorney unknown, to sell or distribute Heroin."[1] So the question is, was Shewfelt charged with a conspiracy with Sanchez to deliver heroin to Fightlin or was he charged with attempting to deliver the heroin to Fightlin as an overt act in furtherance of a broader conspiracy among Shewfelt, Sanchez, and Fightlin to resell the drugs to Fightlin's customers?

---

[1] The People were not required to prove that "a person or persons to the District Attorney unknown" also participated in the conspiracy. *See* § 16-5-202(3), C.R.S. 2024 ("Pleading in either the conjunctive or the disjunctive shall place a defendant on notice that the prosecution may rely on any or all of the alternatives alleged.").

Shewfelt contends that he was charged with the former; the People assert that he was charged with the latter.[2] For three reasons, we conclude that the record demonstrates that the charged conspiracy was to deliver drugs to Fightlin and nothing further.

¶ 9 First, the district court and the prosecutor understood the conspiracy to be limited in this way during the proceedings below. For instance, while discussing Fightlin's text messages during a previous jury trial that ended in a mistrial, the court said the following:

> [T]he argument becomes, "That's a conspiracy with Fightlin." He's not charged with a conspiracy for Fightlin. If that's the evidence as the conspiracy, that's not a conspiracy with Holiday Sanchez.

---

[2] Both Shewfelt and the People seem to have taken the opposite position before the district court. The court made a pretrial ruling that Sanchez's interrogation would not be admissible as co-conspirator statements; Shewfelt, apparently understanding this ruling to bar the admission of any statements by conspirators, argued that Fightlin was a co-conspirator as well and therefore his text messages should not be admitted. And, as will be further discussed, the prosecution suggested that Fightlin was not a conspirator.

The prosecutor did not object to the court's characterization and said that "the charge is possession with intent to distribute, and he was distributing it to Fightlin."

¶ 10    Second, this understanding of the conspiracy aligns with how the trial unfolded.  For example, Fightlin's text messages were not admitted at trial as substantive nonhearsay statements by a co-conspirator, *see* CRE 801(d)(2)(E) (co-conspirator statements during the course and in furtherance of the conspiracy are not hearsay), but were instead admitted with a limiting instruction for a nonsubstantive purpose, *see* CRE 801(c) (For a statement to be hearsay, it must be "offered in evidence to prove the truth of the matter asserted.").

¶ 11    Third, the complaint charged Shewfelt with "conspir[ing] with Holiday Sanchez, and *a person or persons to the District Attorney unknown*." (Emphasis added.)  The affidavit for an arrest warrant, which was filed shortly after the complaint, makes it clear that the prosecutor was aware that Fightlin was the buyer at the time the

complaint was filed. Nevertheless, the complaint identified Sanchez by name but did not identify Fightlin.

¶ 12    For these reasons, we conclude that Shewfelt was charged with conspiring with Sanchez to deliver heroin to Fightlin, not with conspiring with Fightlin to resell the heroin to others. And Fightlin was not a co-conspirator to this conspiracy because "a mere buyer-seller relationship, without more, does not constitute a conspiracy to distribute a controlled substance." *People v. Lucero*, 2016 COA 105, ¶ 26.

    B.    Sufficiency of the Evidence for the Conspiracy Conviction

¶ 13    We now turn to Shewfelt's contention that there was insufficient evidence of an agreement presented at trial to sustain his conspiracy conviction.

        1.    Standard of Review and Applicable Law

¶ 14    We review the record de novo to determine whether the evidence was sufficient both in quantity and quality to sustain a conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). To determine whether the prosecution presented sufficient evidence to support a conviction, we consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the

light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)). In doing so, we give the prosecution the benefit of all reasonable inferences supported by a logical connection between the facts established and the conclusion inferred. *Id.* at 1292.

¶ 15 In making this determination, we recognize that "it is the jury which should decide the difficult questions of witness credibility and the weight to be given to conflicting items of evidence," *People v. Gibson*, 203 P.3d 571, 575 (Colo. App. 2008) (quoting *People v. Brassfield*, 652 P.2d 588, 592 (Colo. 1982)), and we do not sit as a thirteenth juror to reassess witness credibility or to reweigh the evidence presented to the jury, *see Clark*, 232 P.3d at 1293; *People v. Franklin*, 645 P.2d 1, 4 (Colo. 1982) ("The determination of the credibility of witnesses is a matter solely within the province of the jury.").

## 2. Discussion

¶ 16 A person commits conspiracy to distribute a controlled substance by, as relevant here, "knowingly . . . conspir[ing] with one

7

or more other persons, to . . . sell, or distribute, a controlled substance." § 18-18-405(1)(a), C.R.S. 2024. Under the general conspiracy statute, "[a] person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, he agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime." § 18-2-201(1), C.R.S. 2024; *see Lucero*, ¶ 12 (applying the general conspiracy statute to the offense of conspiracy to distribute a controlled substance).

¶ 17     "Conspiracy requires proof of a 'real agreement, combination, or confederation with a common design. (Mere passive cognizance of the crime to be committed or mere negative acquiescence is not sufficient.)'" *Lucero*, ¶ 13 (quoting *Bates v. People*, 498 P.2d 1136, 1138 (Colo. 1972)). But the agreement "need not be formal or susceptible to direct proof, and may be, and indeed must generally be proved circumstantially." *People v. Nelson*, 539 P.2d 477, 479 (Colo. 1975) (citation omitted); *see also United States v. Loveland*,

825 F.3d 555, 561-62 (9th Cir. 2016) (The agreement "can be explicit or tacit.").

¶ 18    Shewfelt asserts that there was insufficient evidence of an agreement between him and Sanchez to sell or distribute heroin.[3] But the jury was presented evidence that

- Sanchez was driving Shewfelt to Fightlin in the early morning;

- before they left, Shewfelt informed Fightlin that he was going to "bring a half," which the prosecution's expert explained meant that Shewfelt was going to bring Fightlin half an ounce of heroin;

- a little over half an ounce of heroin, along with various drug distribution paraphernalia, was found in the truck;

- unused tinfoil, which the prosecution's expert testified is commonly used to distribute or smoke heroin, was found in Sanchez's purse, and the heroin was discovered under the driver's seat that Sanchez had occupied;

---

[3] Shewfelt also argues that there was no evidence of an agreement between him and Fightlin. But as we have already discussed, *supra* Part II.A, Fightlin was not a conspirator in the charged conspiracy.

- Shewfelt told police officers that the heroin belonged to Sanchez; and

- Sanchez attempted to elude the police when they tried to initiate a traffic stop and later tried to flee the scene on foot after crashing the truck.

¶ 19 Shewfelt argues that this evidence only establishes Sanchez's presence and that "[m]ere presence does not amount to sufficient independent evidence to support the existence of the conspiracy." *People v. Braly*, 532 P.2d 325, 328 (Colo. 1975), *overruled on other grounds by People v. Montoya*, 753 P.2d 729 (Colo. 1988). We disagree. Sanchez was not "merely present"; she was actively involved by driving Shewfelt to deliver heroin to Fightlin. *See United States v. Herrera*, 526 F. App'x 823, 826-27 (10th Cir. 2013) (The fact the defendant was driving drug dealers to a drug deal "allowed the jury to infer that [the] [d]efendant knowledgeably associated himself with the drug deal and facilitated its success."). Moreover, Sanchez attempted to elude the police and fled from the truck after crashing, which could indicate her participation in and consciousness of guilt about the conspiracy. *See People v. Gee*, 2015 COA 151, ¶ 26 ("Evidence of flight . . . suggests a guilty mind,

10

and '[f]rom a guilty mind, guilt itself may be inferred.'" (quoting *People v. Summitt,* 132 P.3d 320, 324 (Colo. 2006))) (second alteration in original).

¶ 20     Viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable jury could infer an agreement between Shewfelt and Sanchez to deliver heroin to Fightlin. *See People v. Randell,* 2012 COA 108, ¶ 45 (conspiracy agreements may be inferred from co-conspirators' actions); *see also People v. Robinson,* 226 P.3d 1145, 1155 (Colo. App. 2009) ("Because of the 'covert and secretive nature of the offense,' most evidence supporting a conspiracy will be circumstantial.") (citation omitted). Accordingly, the evidence was sufficient to sustain Shewfelt's conspiracy conviction.

C.     Simple Variance and Unanimity for the Conspiracy Conviction

¶ 21     Shewfelt next contends that the evidence presented at trial established a conspiracy different from the one charged in the complaint. He asserts that this resulted in a prejudicial variance

and violated his right to a unanimous verdict on the conspiracy charge. We disagree.

### 1. Standard of Review and Applicable Law

¶ 22 We review de novo whether a variance occurred, *People v. Rail*, 2016 COA 24, ¶ 48, *aff'd on other grounds*, 2019 CO 99, and whether the district court erred by failing to give a modified unanimity instruction, *People v. Hines*, 2021 COA 45, ¶ 48. Shewfelt did not preserve these arguments, so we will only reverse if there was plain error. *See People v. Smith*, 2018 CO 33, ¶¶ 22-24. "[P]lain error occurs when there is (1) an error, (2) that is obvious, and (3) that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Cardman v. People*, 2019 CO 73, ¶ 19.

¶ 23 There are two types of variances, *Campbell v. People*, 2020 CO 49, ¶ 45, but Shewfelt alleges only one — a simple variance — occurred here. A simple variance "occurs when the evidence presented at trial proves facts materially different from those alleged in the charging document." *Id.* (quoting *Smith*, ¶ 25). Such a variance generally will not require reversal as long as the proof on

which the conviction is based corresponds to an offense clearly set out in the charging instrument. *Id.*

¶ 24 Additionally, the district court has "a duty to correctly instruct juries on all matters of law." *Day v. Johnson,* 255 P.3d 1064, 1067 (Colo. 2011). In Colorado, a defendant has a statutory right to a unanimous jury verdict. § 16-10-108, C.R.S. 2024; Crim. P. 23(a)(8); Crim. P. 31(a)(3); *People v. Linares-Guzman,* 195 P.3d 1130, 1134 (Colo. App. 2008). "Unanimity means only that each juror agrees that each element of the crime charged has been proved to that juror's satisfaction beyond a reasonable doubt." *Linares-Guzman,* 195 P.3d at 1134; *see People v. Lewis,* 710 P.2d 1110, 1116 (Colo. App. 1985).

¶ 25 "Generally, jurors need not agree about the evidence or theory by which a particular element is established . . . ." *People v. Vigil,* 251 P.3d 442, 447 (Colo. App. 2010); *see People v. Dunlap,* 124 P.3d 780, 815 (Colo. App. 2004) (the defendant was not deprived of his right to a unanimous verdict even though the theft instruction included both the "without authorization" and "threat and deception" theories). But when the prosecution presents evidence of multiple distinct acts that could constitute the charged offense

13

and the jury has a reasonable likelihood of disagreeing over which act was committed, the district court must either (1) require the prosecution to elect the transaction on which it relies for the conviction or (2) provide a special instruction that the jury must unanimously agree that the defendant committed the same act or all of the acts. *People v. Archuleta*, 2020 CO 63M, ¶¶ 21-22; *Hines*, ¶ 50.

## 2. Discussion

¶ 26    Shewfelt argues that the People pivoted midtrial from attempting to prove a conspiracy between Shewfelt and Sanchez to "focusing on Fightlin and Shewfelt's text messages to prove Fightlin as the co-conspirator." This change, according to Shewfelt, resulted in a prejudicial variance and, because the district court did not give a modified unanimity instruction, allowed the jury to return a guilty verdict that may not have been unanimous as to whether he conspired with Sanchez or with Fightlin. We reject these arguments because no substantive evidence of a conspiracy between Fightlin and Shewfelt was admitted at trial, and the prosecution did not

argue that such a conspiracy existed and could form the basis of a guilty verdict.[4]

¶ 27  As Shewfelt notes, "[T]he prosecution did not present evidence [at trial] of an agreement to distribute drugs *distinct* from the evidence of an alleged agreement to complete any underlying drug deal (i.e., a drug deal beyond any alleged deal between Shewfelt and Fightlin)." This is because the text messages that Fightlin sent Shewfelt — the only evidence of a broader conspiracy between Shewfelt and Fightlin — were, per the district court's limiting instructions, "admitted only to give context to Mr. Shewfelt's statements and [were] not . . . admitted as substantive evidence." We presume that the jury followed these limiting instructions and did not consider the buyer's text messages as substantive evidence.

---

[4] On appeal, the People assert that "Fightlin was alleged to be part of this conspiracy" and that the prosecutor presented evidence at trial demonstrating a conspiracy between Shewfelt and Fightlin. After reviewing the record de novo, we disagree. *See People v. Curren*, 228 P.3d 253, 257 (Colo. App. 2009) ("Because a record on appeal speaks for itself, an appellate court may accept, but is not bound by, the concessions of counsel regarding the record's contents or inferences drawn therefrom.").

*See People v. Snelling*, 2022 COA 116M, ¶ 22 ("[A]bsent evidence to the contrary, we presume that jurors follow a court's instructions.").

¶ 28     And, contrary to Shewfelt's assertions, the prosecutor did not argue during closing statements that the jury could convict based on a conspiracy between Shewfelt and Fightlin. Instead, the prosecutor told the jury that it had "heard evidence that Ms. Sanchez and Mr. Shewfelt were driving together with drugs in the car and with *a plan to meet Mr. Fightlin.*" (Emphasis added.) The prosecutor only referenced the text messages Shewfelt sent to Fightlin in the context of a plan between Shewfelt and Sanchez to sell Fightlin drugs. Notably, the prosecutor did not mention any of the text messages sent by Fightlin to Shewfelt and did not suggest there was a plan for Fightlin to redistribute the drugs received from Shewfelt.

¶ 29     During rebuttal closing, the prosecutor did make a somewhat inartful statement that, if read in isolation, could suggest that Fightlin was a co-conspirator:

> Who are the other people to show that the defendant is guilty of this charge [of conspiracy?] Holiday Sanchez is one of them. She was present with Mr. Shewfelt. She drove his vehicle. . . . It's the other individual — we

16

know who that is. Look at those text messages.

But the prosecutor immediately went on to clarify that he was referring to the text messages with "the other individual" (Fightlin) because "those text messages, they show the overt act towards *delivering* those drugs." (Emphasis added.) There was again no reference during rebuttal closing to a conspiracy between Shewfelt and Fightlin to redistribute drugs.

¶ 30      In sum, there was no substantive evidence of a conspiracy between Fightlin and Shewfelt admitted during trial, and the prosecution did not argue that any such conspiracy existed. Accordingly, we conclude that no variance occurred and the district court was not required to give the jury a modified unanimity instruction. *See Archuleta*, ¶¶ 21-22.

D.    Limited Admission of the Text Messages

¶ 31      Shewfelt contends that the district court reversibly erred by admitting the text messages that Fightlin sent Shewfelt. Specifically, he argues that the text messages were inadmissible because they (1) were not authenticated as belonging to Fightlin;

17

(2) contained hearsay; and (3) were irrelevant and risked unfair prejudice and misleading the jury. We are not persuaded.

### 1. Standard of Review

¶ 32    We review evidentiary rulings for an abuse of discretion. *People v. Abad*, 2021 COA 6, ¶ 8. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or misapplies the law. *Id.*

### 2. Authentication

¶ 33    We first address Shewfelt's argument that the district court abused its discretion by admitting the text messages because Fightlin was not shown to be the person on the other side of the text messages.

¶ 34    The requirement of authentication as a condition precedent to admissibility "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." CRE 901(a). The burden to authenticate "'is not high — only a prima facie showing is required,' and a 'district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic.'" *People v. Glover*, 2015 COA 16,

¶ 13 (citation omitted). Once this prima facie burden is met, authenticity becomes a question for the jury. *Gonzales v. People*, 2020 CO 71, ¶ 6.

¶ 35    Shewfelt does not dispute that the text messages were extracted from one of the cell phones retrieved from his truck, nor does he argue that there were authentication issues created by the extraction process. Indeed, the prosecution's expert witness who performed the extraction testified about how he extracted the data from the cell phone and all the ways it was associated with Shewfelt. This testimony satisfied CRE 901 for Shewfelt's messages. *See People v. Hamilton*, 2019 COA 101, ¶ 36 ("The proponent may authenticate electronically generated printouts through the testimony of a person with personal knowledge of how the printouts were generated and that they are what they are claimed to be.").

¶ 36    Nevertheless, relying on *People v. Heisler*, 2017 COA 58, Shewfelt contends that the prosecution was required to prove that Fightlin was the person sending messages to Shewfelt for those text messages to be admissible. But the text messages were "admitted only to give context to Mr. Shewfelt's statements and [were] not . . .

admitted as substantive evidence," and the district court further instructed the jury that "it has not been conclusively shown that Mr. Fightlin was the other texting party." *Heisler* does not apply to messages admitted under these circumstances. *See Abad,* ¶¶ 45, 65 (concluding the district court did not abuse its discretion by finding that cell phone records including "statements by other unknown individuals engaging in a chat conversation with" the defendant satisfied Rule 901(a)); *Glover,* ¶¶ 41-42 (requiring "the prosecution to prove that the [Facebook] account belonged to [the] defendant and that [the] defendant authored the messages in the printout," but not imposing the same requirement for "statements made by others in the records" that "were admitted to give context to [the] defendant's statements"); *see also People v. Arnold,* 826 P.2d 365, 366 (Colo. App. 1991) ("[R]eliability or truth is not at issue" with statements "offered for the sole and limited purpose of putting the responses of the defendant in context and making them

understandable to the jury, and not for the truth of their content"; instead, "[t]he only pertinent fact is that they were made.").

¶ 37 Accordingly, the district court did not abuse its discretion by admitting the text messages allegedly sent by Fightlin as nonsubstantive evidence with limiting instructions.

### 3. Hearsay

¶ 38 We next turn to Shewfelt's argument that the text messages were inadmissible hearsay.

¶ 39 Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). But "statements offered for other purposes — such as showing the statement's effect on the listener or to give context to a defendant's statements — are not offered for their truth and are not hearsay." *Abad*, ¶ 52.

¶ 40 Shewfelt argues that the text messages from Fightlin were inadmissible hearsay because "[t]he prosecution admitted Fightlin's statements for the truth of the matter — to establish Fightlin owned the phone corresponding with Shewfelt, signifying a relationship and an agreement to sell or distribute heroin, which was necessary to prove the conspiracy count." Moreover, he contends that the

People relied on Fightlin's text messages for their truth because "the only actual evidence of anything possibly resembling an agreement was the messages between Shewfelt" and Fightlin.[5]

¶ 41     But as we have already discussed, there was sufficient evidence to support a conspiracy conviction between Shewfelt and Sanchez, *see supra* Part II.B, and the People did not argue that there was a conspiracy between Shewfelt and Fightlin, *see supra* Part II.C.  Thus, Fightlin's text messages were not admitted or relied on for their truth, and we cannot conclude that the district court abused its discretion by admitting these messages for the limited nonhearsay purpose of giving context to Shewfelt's own statements.

### 4.     Relevancy and Prejudice

¶ 42     Finally, Shewfelt contends that the text messages should not have been admitted because they were irrelevant if they could not

---

[5] In a footnote, Shewfelt also contends that "[i]t is also likely that the statements are hearsay within hearsay because [the] Detective . . . created the exhibit by using Microsoft Word and typing the statements from a Cellebrite report."  But he does not develop this contention further in his opening brief, so we will not consider it.  *See People v. Liggett*, 2021 COA 51, ¶ 53, *aff'd,* 2023 CO 22.  Nor will we consider his related argument, raised for the first time in his reply brief, that the text messages were inadmissible under the best evidence rule.  *See People v. Owens*, 2024 CO 10, ¶ 90.

be authenticated as sent by Fightlin, and they risked misleading the jury by introducing a different conspiracy.

¶ 43    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.  But relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  CRE 403.

¶ 44    The balancing test under Rule 403 strongly favors the admission of evidence.  *Masters v. People*, 58 P.3d 979, 1001 (Colo. 2002).  By requiring that the probative value of the evidence be "substantially outweighed" by the danger of unfair prejudice, "the rule makes clear that the need for exclusion must be great."  *Id.* Thus, when reviewing a district court's exercise of discretion under Rule 403, an appellate court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995).

¶ 45    Shewfelt's argument that the text messages were irrelevant relies on the premise that they were introduced in order to prove a

conspiracy between Shewfelt and Fightlin. We have already rejected that premise. *See supra* Part II.C. The text messages sent by Fightlin were relevant for the limited purpose they were admitted for: to give context to the messages that Shewfelt sent. And the messages that Shewfelt sent were highly relevant to prove both the underlying possession with intent to distribute charge and the conspiracy between Shewfelt and Sanchez because they demonstrated that Shewfelt was travelling with the drugs to provide them to Fightlin.

¶ 46    Turning to prejudice, we acknowledge that Fightlin's text messages posed a risk of confusing the jury by introducing a second conspiracy. However, the district court mitigated this prejudice by admitting the messages as nonsubstantive evidence and instructing the jury accordingly both at the time the messages were introduced and in the final jury instructions. Given that we assume the jury follows the court's instructions, *Snelling*, ¶ 22, and giving the text messages the maximum probative value and the minimum unfair prejudice that could reasonably be expected, *Gibbens*, 905 P.2d at 607, we cannot conclude that the probative value of the messages is substantially outweighed by the risk of

unfair prejudice or confusion. Accordingly, the court did not err by admitting the text messages.

### E. Lay Witness Testimony

¶ 47 Shewfelt contends that the district court plainly erred by allowing two police officers to present expert testimony under the guise of lay opinion testimony. We discern no basis for reversal.

#### 1. The Testimony

¶ 48 The first officer testified about his search of Shewfelt's truck and made the following statements:

- The officer "came across some crumpled tinfoil with burn marks on it, which . . . typically coincides with illicit drug use."

-  The officer found "a glass pipe in a black bag, which is consistent with illicit drug use. There was residue inside the pipe."

- There was "a can of butane gas. Typically, butane gas can be used to heat drugs for consumption."

- There were three round containers with a brown substance in them, and the officer "observed [the substance] to be consistent with heroin."

25

- Having multiple containers was, based on the officer's "training and experience," not consistent with personal drug use. And the "amounts in the containers seemed like a larger amount than what [the officer had] seen before in terms of training and experience for personal use."

- There was a "dentist's picking tool." Because the tool "had burn marks on it," it seemed similar to tools the officer had encountered in other situations that were "used to handle drugs, whether to distribute drugs for consumption or distribution."

Shewfelt's counsel only objected to the statement about the amount of drugs not being consistent with personal use, but he withdrew that objection after a bench conference.

¶ 49    The second officer testified that he also examined the round containers from Shewfelt's truck and saw a substance that was "consistent in appearance with what [he had] seen black tar heroin

to look like." Shewfelt's counsel did not object to this statement either.

¶ 50    The two officers were not offered as expert witnesses.

2.    Standard of Review and Applicable Law

¶ 51    We review a district court's evidentiary decision for abuse of discretion. *Venalonzo v. People*, 2017 CO 9, ¶ 15. Shewfelt's counsel withdrew his only objection to one of the challenged statements, so we review for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14.[6] As discussed above, a plain error must so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Cardman*, ¶ 19.

¶ 52    CRE 701 defines the scope of lay witness opinion testimony. Under Rule 701, lay witness testimony in the form of opinions or inferences must be "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based

---

[6] The People contend that Shewfelt's counsel's withdrawal of his objection constitutes a waiver as to the objected-to statement, and therefore we should not review it. We need not resolve this contention because allowing the statement was not plain error.

on scientific, technical, or other specialized knowledge within the scope of [CRE] 702."

¶ 53  Rule 702, on the other hand, concerns the admissibility of expert testimony. Under this rule, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." CRE 702.

¶ 54  The critical factor in distinguishing between lay and expert opinion testimony is the basis for the witness's opinion. *People v. Dominguez*, 2019 COA 78, ¶ 40. Expert testimony is that which goes beyond the realm of common experience and requires experience, skills, or knowledge that the ordinary person would not have. *Venalonzo*, ¶ 22.

### 3.   Discussion

¶ 55  Shewfelt contends that each of the above statements constituted improperly admitted lay testimony. The People argue that the testimony about drug paraphernalia fell within an ordinary person's knowledge or experience and was therefore not expert testimony, but the People concede that "testimony identifying the

substance as heroin or about personal use amounts . . . appears to have crossed the line into expert testimony."

¶ 56 To start, we agree with the People that, at the very least, the testimony that a glass pipe with residue and butane gas are often associated with drug use did not go beyond the realm of common experience that an ordinary person would possess. *See id.*; *People v. Veren*, 140 P.3d 131, 139 (Colo. App. 2005) ("We recognize that certain basic information about drugs may properly fall within the scope of lay opinion testimony."). It is common knowledge that pipes and lighters can and often are used to smoke illegal substances. Accordingly, the district court did not abuse its discretion by allowing this testimony.

¶ 57 We further conclude that, even assuming that all of the remaining statements were improperly admitted lay testimony, there is no plain error because the statements were cumulative of properly admitted expert testimony. *See People v. Douglas*, 2015 COA 155, ¶ 41. After the two police officers testified, the prosecution presented two expert witnesses. The first expert was tendered and accepted as "an expert in the area of drug identification and analysis." She testified that she performed a

29

laboratory analysis on the substance found in Shewfelt's truck and was "able to identify that as heroin." The second expert was endorsed as "an expert in the area of narcotics, drug enforcement and investigations." He testified that

- the heroin being in multiple separate containers indicated a plan to distribute;

- "heroin is sold on the street usually on the point or the tenth of a gram, so" a typical drug user would "use a few tenths a day";

- heroin is commonly sold or distributed in tinfoil, and it is "very common" for heroin to be smoked off of tinfoil; and

- "[a]nything with burn marks would be suspicious" for drug usage.

¶ 58    Thus, the two experts' testimony established that the substance was heroin; the amount of heroin and the way it was packaged indicated distribution as opposed to personal use; tinfoil is used both to distribute and to smoke heroin; and burn marks, such as on the dentist's pick or tinfoil, are associated with drug usage. The two officers' admitted lay statements were cumulative of

this properly admitted expert testimony.  Therefore, there is no plain error.  *See id.*

### F.  Cumulative Error

¶ 59    Shewfelt contends that the cumulative effect of the alleged errors in his trial mandates reversal.  We are not persuaded.

¶ 60    "The doctrine of cumulative error requires that numerous errors be committed, not merely alleged." *People v. Conyac*, 2014 COA 8M, ¶ 152.  Under the doctrine, although an individual error, when viewed in isolation, may be harmless, reversal is required when the cumulative effect of multiple errors and defects substantially affected the fairness of the trial or the integrity of the factfinding process.  *Howard-Walker v. People*, 2019 CO 69, ¶ 24.

¶ 61    We have assumed that five statements made by police officer witnesses were improper expert testimony.  However, we concluded that the admission of each statement, individually, did not constitute plain error because each was cumulative of properly admitted expert testimony.  For similar reasons, we now conclude that these five statements collectively did not substantially impact the fairness of the trial or the integrity of the factfinding process, as there was other properly admitted expert testimony that supported

31

the same statements and the jury was instructed that the "number of witnesses testifying for or against a certain fact does not, by itself, prove or disprove that fact." *See id.*

### III.   Disposition

¶ 62    The judgment is affirmed.

JUDGE J. JONES and JUDGE BROWN concur.