22CA1914 Peo v Messerly 07-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1914
Moffat County District Court No. 21CR59
Honorable Sandra H. Gardner, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kaylee Ann Messerly,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Gomez and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Kaylee Ann Messerly, appeals her convictions for child abuse resulting in serious bodily injury and child abuse resulting in death. We affirm the judgment.

## I.     Background

¶ 2     In the early morning of March 11, 2021, an individual reported an abandoned car and stroller on a private road off County Road 54. When Deputy Leanna Dennis arrived, the snow was beginning to melt, and the road was muddy and slick. She was concerned her car would get stuck, so she stopped when she was near enough to read the car's license plate. After running the plate number, she learned that the car was registered to Messerly. Dennis called the associated phone number and Messerly's sister, Amy,[1] answered. She said that Messerly had left her phone at home and that she had not seen Messerly for a couple of days.

¶ 3     Dennis called her partner, Corporal Nathan Baker and asked him to bring the sheriff's office utility vehicle to conduct a search. When Baker arrived, they drove up to the car and saw no one was

---

[1] Because Amy shares the same name last name as Messerly, we refer to her by her first name. We mean no disrespect in doing so.

inside it.  They walked a quarter of a mile down the private road and found a stroller stuck in the mud.

¶ 4    Back at the station, Lieutenant Chip McIntyre followed up with Amy.  Amy had not heard from Messerly since March 9 and said Messerly often left without her phone and without telling her family where she was going.  Amy said Messerly's one-year-old daughter, E.S., and two-year-old daughter, A.S., were likely with her.

¶ 5    After a ground and aerial search, Baker found Messerly holding A.S. approximately one mile from the car.  Messerly was wearing a T-shirt, black stretchy pants, and leather boots.  A.S. was wrapped in a black coat but had no socks or shoes.  As Baker approached, Messerly said that her other baby was up the hill.  Approximately one hundred yards away, E.S. was lying in a pile of sage brush.  She wore leopard print leggings and a light jacket but had no hat, gloves, shoes, or socks.  E.S. had died of hypothermia.

¶ 6    Messerly and A.S. were taken to the hospital where Detective Gary L. Nichols interviewed Messerly.  Messerly said she and her children spent two nights in the snow.  On March 9, around 1 p.m., she brought A.S. and E.S. to the private road to look for sticks and

stones to paint.  When they arrived, it was a nice day.[2]  Messerly

did not check the weather, so she did not know a blizzard was

expected that night, and she did not bring winter clothing.[3]  After

collecting stones, Messerly's car got stuck in the mud and would

not start.  Messerly sat in her car for four hours until she thought

she saw house lights in the distance.  With both children in the

stroller, Messerly started walking towards the lights.[4]  When the

stroller got stuck in the mud, she continued down the road holding

both children.  When she reached the lights, she realized it was an

oil rig, not a house.  It was dark, and when Messerly looked back

she did not see her car.  She continued to walk away from the car,

calling out for help.  As it began snowing, Messerly and her children

sat in the sage brush.[5]  A.S. and E.S. lost their shoes and socks.

The next day, they slept in the trees as it continued to snow.  When

Messerly tried to walk she could only travel a distance of around six

---

[2] According to a report from the National Weather Service, at 1:53 p.m. the temperature was 50 degrees and conditions were fair.
[3] During the search of Messerly's car, officers found clothing, jackets, shoes, and a comforter.
[4] At 4:53 p.m. the temperature was 50 degrees, and it was slightly cloudy.
[5] At 11:53 p.m. the temperature was 33 degrees, and it was snowing heavily.

feet before having to sit down. During the second night, Messerly fell asleep for twenty minutes, and when she awoke, E.S. was "not ok." She then wrapped her black coat around A.S. to keep her warm.

¶ 7     When A.S. arrived at the emergency room, she had fourth-degree frostbite, the most severe level of frostbite, causing irreversible injury to her lower extremities. A.S.'s left foot required amputation above the ankle, and her right leg required amputation below the knee.

¶ 8     Messerly admitted to previously smoking methamphetamine but said that she was trying to get clean. Messerly said that if methamphetamine was found in her system it was because she and E.S. consumed snow that was next to a methane gas plant. A.S. did not eat the snow because she was "the smart one of us." Messerly and A.S. tested positive for methamphetamine. During a follow up interview, Messerly said that she did a "hot rail"[6] on March 8 or 9.

---

[6] A "hot rail" refers to when an individual heats up the end of a glass pipe/stem and inhales the vapor of methamphetamine up their nose.

¶ 9     The State charged Messerly with one count of child abuse resulting in death (E.S.) and one count of child abuse resulting in serious bodily injury (A.S.).  The jury convicted Messerly on both counts.  The trial court sentenced her to sixteen years in the custody of the Department of Corrections for E.S.'s death and imposed a consecutive sentence of ten years for A.S.'s serious bodily injury.

¶ 10    On appeal Messerly contends that she was erroneously convicted of "knowingly" or "recklessly" committing child abuse because the trial court determined at the preliminary hearing that the evidence did not establish probable cause to believe that Messerly "knowingly" committed the charged crimes.  She further contends the trial court erred by permitting the prosecutor to use reasonable doubt analogies and by admitting other act evidence. We affirm the judgment.

II.    Preliminary Hearing and Probable Cause

¶ 11    Messerly contends that she was erroneously convicted of "knowingly" and "recklessly" committing child abuse despite the trial court determining that probable cause did not exist for the "knowingly" mental state at the preliminary hearing.  We conclude

that this contention was waived. However, even if the contention was not waived, we perceive no plain error.

## A. Additional Background

¶ 12    In the complaint, the State charged Messerly with two counts of child abuse:

> *Count 1 – Child Abuse Resulting in Death*
>
> Between and including March 9, 2021 and March 11, 2021, Kaylee Ann Messerly unlawfully, feloniously, *knowingly, or recklessly* caused an injury to, or permitted to be unreasonably placed in a situation that posed a threat of injury to, the life, or health if a child, namely: E.S., that resulted in the death of the child; in violation of section 18-6-401(1)(a), (7)(a)(I), C.R.S. [2024.]
>
> *Count 2 – Child Abuse Resulting in Serious Bodily Injury*
>
> Between and including March 9, 2021 and March 11, 2021, Kaylee Ann Messerly unlawfully, feloniously, *knowingly, or recklessly* caused an injury to, or permitted to be unreasonably placed in a situation that posed a threat of injury to, the life or health of a child, namely: A.S., that resulted in serious bodily injury to the child; in violation of section 18-6-401(1)(a), (7)(a)(III), C.R.S.

(Emphases added.)

¶ 13    Messerly requested the lesser included offense of child abuse, negligence.

6

¶ 14    Lieutenant McIntyre testified at the preliminary hearing.  The prosecutor argued that McIntyre's testimony was sufficient to establish probable cause that Messerly recklessly caused serious bodily injury to A.S. and recklessly caused E.S.'s death by "recklessly leaving the vehicle, not bringing them warm clothes, not going back to the vehicle . . . and just staying out there in this cold for . . . multiple nights."

¶ 15    Messerly argued that the prosecutor failed to establish probable cause that Messerly acted "knowingly" or "recklessly" and instead asked the trial court bind the case over to the district court on the lesser included offense of negligent child abuse.  Messerly argued:

> I could acknowledge that they've made a case for negligence.  But [when you] talk about knowing conduct or reckless conduct, in the case of knowingly, Your Honor, [you] have to demonstrate that there was evidence that Ms. Messerly was aware that her conduct [was] going to cause either death or [serious] bodily injury to her children, [and] notwithstanding that, [she] persisted in that conduct, knowing that it would cause death or serious bodily injury, or alternatively — and she would — they have to show that her conduct was reckless.

7

That is to say that she consciously disregarded a known risk that death would occur, or serious bodily injury would occur to one of the — one of the children. And . . . they have not set out facts sufficient to allow the Court to draw such a conclusion.

¶ 16 Messerly argued that the prosecution relied on the fact that Messerly did not check the weather, that her car got stuck, and that she exited the car to show probable cause for knowing or reckless conduct. Messerly asserted that this conduct only established probable cause for negligent child abuse resulting in serious bodily injury and death.

¶ 17 The prosecutor responded:

[T]he standard here is that Ms. Messerly recklessly — not that she recklessly (indiscernible) the death, but that she recklessly permitted a child to be unreasonably placed in a situation that posed a threat of injury to the child's life or health, which then resulted in serious bodily injury or the death of a child.

And certainly these children were permitted to be unreasonably placed in a situation that posed a threat of injury to their life or health. You know, even if each of these individual actions, you know, themselves don't give — rise to the level of reckless, all of them together do. They show that there was this substantial risk. It continued to build, it continued to build, and it was disregarded.

¶ 18 The prosecutor argued that the amount of time Messerly remained outside without attempting to return to the car established reckless behavior. "And that that recklessness did permit the child to be unreasonably placed in this situation that posed a threat of injury to the child's life or health and — and did result in serious bodily injury and death."

¶ 19 The trial court found:

> Starting with child abuse resulting in death, . . . and focusing specifically on recklessly. I don't think that the People have established knowingly, but that recklessly Ms. Messerly permitted — permitted her child to be unreasonably placed in a situation that posed a threat of injury to the life or health of the child, and then resulted in death.
>
> . . . .
>
> But when you look at all of these events, and how they transpired, I think from a probable cause standard, they rise to the level of recklessly, recklessly permitting a child to be unreasonably placed in a situation that posed the threat of injury to the life or health of a child. And we know that that resulted in the death of a child. That is clear. That that occurred in Moffat County between March 9th and March 11th of 2021.
>
> With regard to Count 2, under the same standard, recklessly, permitted to be unreasonably placed in a situation that posed

9

a threat of injury to the life or health of a child that resulted in serious bodily injury. And that particular child also tested positive for methamphetamine, adding a — an additional layer of what could be deemed as reckless. That she was unreasonably placed in a situation that posed a threat of injury to her life or health. That occurred, as the testimony explained, between March 9th and March 11th, 2021, and resulted in serious bodily injury to the child. We heard testimony that the doctor at Children's Hospital who examined her signed off on a serious bodily injury form.

Let me just make sure I've covered everything I wanted to cover in my notes, folks. For the purpose of the preliminary hearing, I find that the People have carried their burden, and I will order both cases being bound over to the district court for further proceedings.

. . . .

DEFENSE COUNSEL: My understanding is the Court has found that they have not shown probable cause for knowing conduct; is that correct?

TRIAL COURT: That is correct. I have not found probable cause for knowingly.

¶ 20    The court ruled the trial would proceed on both counts.

¶ 21    During the jury instruction conference, the prosecutor

tendered the following instruction:

The elements of the crime of Child Abuse as it relates to Counts 1 and 2 are:

10

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. *knowingly*,

4. caused an injury to a child's life or health, or permitted a child to be unreasonably placed in a situation that posed a threat or injury to the child's life or health, or engaged in a continued pattern of conduct that resulted in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately resulted in the death of a child or serious bodily injury to a child.

After considering all the evidence, if you decide the prosecution has proven each of the elements beyond a reasonable doubt, you should find the defendant guilty of Child Abuse.

After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements beyond a reasonable doubt, you should find the defendant not guilty of Child Abuse.

(Emphasis added.)

¶ 22    The following discussion ensued:

TRIAL COURT: I believe there is an error on Element 3, knowingly. As charged in the complaint, it is knowingly or recklessly.

DEFENSE COUNSEL: I can live with knowingly.

11

PROSECUTION: We would ask that recklessly be added.

TRIAL COURT: All right. Any further modifications to that instruction?

DEFENSE COUNSEL: I don't think so, Judge.

TRIAL COURT: So Element 3 will read knowingly or recklessly.

### B.    Applicable Law and Standard of Review

¶ 23    "[P]reliminary hearings are for the purpose of determining whether 'there is probable cause to believe that an offense has been committed and that the person charged committed it.'" *People v. Villapando*, 984 P.2d 51, 55 (Colo. 1999) (quoting *People v. Dist. Ct.*, 803 P.2d 193, 196 (Colo. 1990)). The prosecution has probable cause when it "present[s] evidence sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendant committed the crime." *Dist. Ct.*, 803 P.2d at 196. At a preliminary hearing, the prosecution does not need to "present evidence sufficient to support a conviction for the crime charged." *Villapando*, 984 P.2d at 55. "Rather, the preliminary hearing acts as a screening device . . . ." *Id.*

¶ 24    "If, from the evidence [presented at a preliminary hearing], it appears to the district court that no probable cause exists to believe

12

that any or all of the offenses charged were committed by the defendant, the court shall dismiss those counts from the information . . . ." Crim. P. 7(h)(4).

¶ 25     A trial court has a duty to instruct the jury correctly on all matters of law. *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011). We review jury instructions de novo to determine whether they correctly informed the jury of the applicable law. *Id.*

¶ 26     Waiver is the intentional relinquishment of a known right or privilege. *People v. Rediger*, 2018 CO 32, ¶ 39. A waived claim of error presents nothing for an appellate court to review. *People v. Kessler*, 2018 COA 60, ¶ 68. Although a mere failure to object does not in all cases constitute a waiver, *Rediger*, ¶ 44, unequivocally agreeing to a proposed course of action with full knowledge of the surrounding facts and circumstances does, *Forgette v. People*, 2023 CO 4, ¶ 34 (when counsel was fully aware of a sleeping juror but failed to ask the court to address the issue, defendant intentionally relinquished his right to object and therefore waived appellate review of the issue).

¶ 27     We review unpreserved, forfeited errors for plain error. *People v. Van Meter*, 2018 COA 13, ¶ 42. Reversal is required under this

standard only if the error was obvious and "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos v. People*, 2012 CO 63, ¶ 18.

## C. Analysis

¶ 28    We conclude that Messerly waived this contention. Despite the court's ruling at the preliminary hearing, defense counsel affirmed that he "[could] live with" the prosecutor's tendered instruction that only included "knowingly" after the trial court identified that the instruction did not match the charges that contained both "knowingly" and "recklessly." Messerly did not merely acquiesce to the proposed instruction, but she explicitly agreed to it during the discussion. *Cf. Rediger*, ¶¶ 43-44 (perceiving no waiver of a constructive amendment claim when there was no discussion of the jury instruction challenged on appeal or any indication that counsel knew of a discrepancy between the jury instruction and the charging document). Then, when asked if the instruction needed further modification after "recklessly" was added, defense counsel responded, "I don't think so." Accordingly, based on this record, we conclude Messerly waived this issue.

¶ 29    However, even assuming an error occurred and was not waived, we conclude any error was not plain for three reasons. First, the error was not obvious because the jury instruction tracked the statutory language and was therefore legally correct. *See People v. Chase*, 2013 COA 27, ¶ 60 ("A jury instruction that tracks [the] language of the statute is almost always sufficient."). It also tracked the model instruction. *See* COLJI-Crim. 6-4:01 (2022). Moreover, when a statute describes two ways in which an offense can be committed, it is proper to instruct the jury in the disjunctive, requiring conviction if any of the statutory alternatives are established by the evidence. *People v. Viduya*, 703 P.2d 1281, 1292 (Colo. 1985).

¶ 30    Second, Messerly argues that the verdict does not indicate the mens rea on which the jury convicted her. But a finding of knowing child abuse necessarily includes a finding of reckless child abuse. *People v. Struckmeyer*, 2020 CO 76, ¶ 6. And "knowingly" is a more difficult mental state to prove. *See People v. Rigsby*, 2020 CO 74, ¶ 21. Therefore, its inclusion in the instruction served to increase the prosecution's burden, making it unlikely that any error contributed to Messerly's conviction.

¶ 31 Third, we reject Messerly's argument that she did not receive notice of the charges against her. A charging instrument is sufficient so long as "it advises the defendant of the charges he is facing so that he can adequately defend himself." *Campbell v. People*, 2020 CO 49, ¶ 44 (quoting *Cervantes v. People*, 715 P.2d 783, 785 (Colo. 1986)). "The prosecution cannot constitutionally require a defendant to answer a charge not contained in the charging instrument." *People v. Rodriguez*, 914 P.2d 230, 257 (Colo. 1996). Here, the prosecutor charged Messerly with knowing or reckless conduct, and the jury instructions and verdict forms matched the charging document.

¶ 32 Accordingly, we perceive no reversible error.

### III. Prosecutorial Misconduct

¶ 33 Messerly next contends that the prosecutor committed misconduct when he employed two analogies to explain reasonable doubt. We disagree and discern no plain error.

### A. Additional Background

¶ 34 Before voir dire, the trial court instructed the jury on reasonable doubt:

16

A reasonable doubt is the highest standard we have in our justice system. It is a doubt based upon reason and common sense, which arises from a fair and rational consideration of all the evidence, or lack of evidence, in this case. It is not a doubt that is vague, speculative, or imaginary, but such a doubt as would cause a reasonable person to hesitate to act in matters of importance to themselves.

¶ 35   During voir dire, the prosecutor presented prospective jurors with a pair of analogies to explain the concept of reasonable doubt. The first analogy involved a dog being left in an apartment.

So [Juror R], I — I use a stupid little factual scenario to kind of explain proof beyond a reasonable doubt. You heard the Judge say it's not vague, speculative, or imaginary doubt. Okay. And so in this little factual scenario, I have a small 600 square foot apartment. I have a couch inside that apartment and I have a dog. Okay? No windows, just the front door.

I leave to go to work in the morning, I lock the door, leave my dog inside. When I leave my dog inside the couch is in the — in the way that I left it, you know, clean, tidy. I come home and the couch is ripped up to shreds and there's fuzz everywhere. Okay? In that stupid little factual scenario, have I proven to you beyond a reasonable doubt that my dog probably destroyed my couch while I was out that day?

JUROR R: Chances are, yeah. The dog probably did it.

¶ 36    The prosecution questioned two more jurors, and they said that they would believe that the dog tore up the couch. The prosecutor continued:

> PROSECUTOR: Uh-huh. Yeah. Do you think beyond a reasonable doubt that the dog did it?
>
> JUROR B: Most likely.
>
> PROSECUTOR: Yeah. Most likely.
>
> JUROR B: Yeah.
>
> PROSECUTOR: And — and it's just like a — it is just this weird concept, right? It's not a numerical concept. It's not 51 percent, 75 percent, 99 percent. You can't attach a number to it, of — how sure you are. It's — it's a legal definition.
>
> But what we do know is it's not vague, speculative, or imaginary. And so one of the things that [a juror] and I was [sic] talking about was, should I speculate that somebody walked in that front door and did it, and blamed it on the dog? Right? Would that be speculative if the — if the evidence was, nope that door wasn't open? What do you think, [Juror B], would that be speculative?
>
> JUROR B: Yes.
>
> PROSECUTOR: Okay. All right? It's not an imaginary doubt.

¶ 37    In the middle of the dog scenario, the prosecutor said:

PROSECUTOR: Right? And you know, we're — we're kind of in that world in criminal law, as well, where we don't oftentimes get a confession about what happened. And so it is left up to us to kind of put the pieces together, put these puzzle pieces together to find out whether or not this actually happened the way it did. What do you think about that?

¶ 38 Messerly's counsel did not object.

¶ 39 Before opening statements, the trial court instructed the jury:

Please understand that it is my job to decide what rules of law apply to the particular case, and you are to follow those rules as I instruct you on them. Even if you disagree or you do not understand why we have a particular rule, you are still to follow the rules. You will then apply these rules that I give you throughout these proceedings to the facts of the case, and that is how you will reach your verdict. And this is how you'll determine whether the prosecution has proven the guilt of Ms. Messerly beyond a reasonable doubt.

¶ 40 Before closing arguments, the trial court instructed the jury:

It is my job to decide what rules of the law apply to the case, the attorneys may comment on these rules, you must follow the instructions I give you. Even if you disagree or do not understand the reasons for some of the rules of law, you must follow them. No single instruction describes all of the law which must be applied. The instructions must be considered as a whole.

. . . .

19

The burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged. Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence or the lack of evidence in the case. It is a doubt which is not a vague, speculative, or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters important to themselves.

## B. Standard of Review and Applicable Law

¶ 41 "Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion." *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). We will not disturb the trial court's ruling regarding such a statement absent a showing of an abuse of discretion. *People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or is based on a misunderstanding or misapplication of the law. *People v. Snelling*, 2022 COA 116M, ¶ 31.

¶ 42 When, as here, a defendant does not object at trial, we review the error under the plain error standard. *People v. James*, 117 P.3d 91, 95 (Colo. App. 2004). "To constitute plain error, misconduct

20

must be flagrant or glaring or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004), *aff'd*, 119 P.3d 1073 (Colo. 2005). And although lawyers "should avoid using analogies when explaining the concept of reasonable doubt to a jury," *People v. Sauser*, 2020 COA 174, ¶ 88, prosecutorial misconduct rarely constitutes plain error, *People v. Carter*, 2015 COA 24M-2, ¶ 53.

¶ 43    When reviewing claims of prosecutorial misconduct, we conduct a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine "whether the prosecutor's questionable conduct was improper based on the totality of the circumstances." *Id.* In doing so, we consider the context of the argument as a whole and view it in the light of the evidence before the jury. *People v. Samson*, 2012 COA 167, ¶ 30.

¶ 44    Second, if the comments were improper, we determine "whether such actions warrant reversal according to the proper standard of review." *Wend*, 235 P.3d at 1096.

21

## C. Analysis

¶ 45 Messerly contends that the analogies lowered the prosecutor's burden of proof and trivialized the jury's task by equating the burden to an everyday choice and by encouraging jurors to guess or jump to a conclusion.

¶ 46 Concerning the puzzle analogy, divisions of this court have specifically held that prosecutors should avoid using puzzle analogies when explaining reasonable doubt to a jury. *See Van Meter*, ¶¶ 31-34. Puzzle analogies can be problematic if they (1) "quantify the concept of reasonable doubt"; (2) "inappropriately trivialize the state's burden"; (3) "equate the burden of proof to an everyday choice"; and (4) "use iconic images, which invite the jury to jump to a conclusion about a defendant's guilt." *People v. Camarigg*, 2017 COA 115M, ¶¶ 44-47; *see also Van Meter*, ¶ 28.

¶ 47 In *People v. Sanders*, the prosecutor said, "All the evidence you heard are pieces for the puzzle. This is the final puzzle." 2022 COA 47, ¶ 46, *aff'd*, 2024 CO 33. The division concluded that the prosecutor's comments did not trivialize the prosecutor's burden because (1) the prosecutor did not compare his burden of proof to simple activities, and (2) there was no attempt to quantify the

22

amount of proof necessary to solve the puzzle. *Id.* at ¶¶ 48-49. As in *Sanders*, the prosecutor here did not use recognizable images or reference missing pieces to quantify reasonable doubt. *Cf. Van Meter*, ¶ 32 (concluding the prosecutor's use of a puzzle analogy, including the display of an incomplete puzzle of a recognizable space shuttle image, was improper). Nor did the prosecutor equate the burden of proof to an everyday choice. Instead, the prosecutor told the jury that it had to consider each piece of evidence in determining whether Messerly was guilty.

¶ 48    But even assuming the prosecutor's use of the analogies was improper, we conclude that any error in allowing the analogies was not plain for three reasons. First, the prosecutor referred to the analogies only briefly during voir dire. *See Sauser*, ¶ 93 (using a puzzle analogy to explain reasonable doubt was improper but didn't amount to plain error because the prosecutor referred to the analogy "only briefly during voir dire and closing argument"); *see also People v. Dominguez-Castor*, 2020 COA 1, ¶ 91 (finding no plain error in prosecutor's improper analogy because, among other things, it was not repeated).

¶ 49    Second, this is unlike cases in which the court gave problematic reasonable doubt analogies.  *See Tibbels v. People*, 2022 CO 1; *see also Pettigrew v. People*, 2022 CO 2.  In contrast to the prosecutor's analogies, the court properly instructed the jury on the prosecution's burden of proof and the definition of reasonable doubt during voir dire, before opening statements, in the jury instructions, and before closing arguments.  *See Carter*, ¶ 59 (concluding the prosecutor's puzzle analogy was not plain error because the trial court instructed the jury twice on the definition of reasonable doubt).  Messerly does not contend that the trial court incorrectly instructed the jury on the meaning of reasonable doubt.  "Absent evidence to suggest otherwise, we presume that the jury followed these instructions."  *Carter*, ¶ 59.

¶ 50    Third, Messerly's failure to object to the analogies may indicate her counsel did not believe they were overly damaging.  *See People v. Villa*, 240 P.3d 343, 356 (Colo. App. 2009) ("The fact that the defendant did not object to the remarks may indicate his belief that the live argument was not overly damaging.").

¶ 51    Accordingly, we perceive no plain error.

24

## IV.    CRE 404(b)

¶ 52    Messerly last contends that the trial court erred in admitting evidence of a prior interaction she had with a tow truck driver.  We disagree.

### A. Additional Background

¶ 53    Before trial, Messerly filed a motion in limine seeking to exclude evidence of two interactions she had with Kelly Hatten, a tow truck driver.  On December 27, 2020, Hatten towed Messerly's car after she was stuck in a ditch.  Then on March 7, 2021, Messerly called Hatten because she locked her keys in her car.  During both interactions, Hatten was concerned with Messerly's safety based on comments she made to him.  The prosecutor responded by filing a notice of intent to introduce the evidence under CRE 404(b) and arguing that the evidence was admissible to show intent, common scheme or plan, and motive.

¶ 54    In a written order, the trial court found evidence of Messerly's interactions with Hatten admissible.  It concluded that the evidence was relevant to show lack of accident or mistake as it "directly bears on the culpable mental state of knowingly and/or particularly recklessly."  The court stated:

> The evidence is logically relevant, because, again at minimum, it would show that [Messerly] knew the potential perils of driving in rural Moffat County in the winter months and the need to be properly prepared. The evidence does not demand the inference of bad character, and the proffered evidence is logically relevant independent of that inference. Furthermore, the probative value is not substantially outweighed by the danger of unfair prejudice.

¶ 55 Before Hatten testified, Messerly expressly waived the option to request that the court provide an oral limiting instruction for tactical reasons, stating, "I just believe that sometimes those limiting instructions serve to highlight the evidence instead of the purpose that they intended."

¶ 56 Hatten testified that on December 27, 2020, he received a call from a passerby about a car stuck in a ditch. It was a cold night, and when Hatten reached Messerly's car, he noticed that she was not appropriately dressed for the weather. She was wearing a T-shirt and shorts and did not have a jacket. Messerly's children were not with her.

### B. Standard of Review and Applicable Law

¶ 57 We review a trial court's decision to admit or exclude other acts evidence under CRE 404(b) for an abuse of discretion. *People*

*v. Jones*, 2013 CO 59, ¶ 11.  We will uphold the trial court's ruling unless it is manifestly arbitrary, unreasonable, or unfair or contrary to law.  *Id.*

¶ 58     CRE 404(b) prohibits using evidence of a defendant's prior acts to prove his character or to show that he acted in conformity with that character on a particular occasion.  However, evidence of an uncharged act may be admissible for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  CRE 404(b)(2).

¶ 59     To be admissible, the prosecution must establish that the prior acts occurred by a preponderance of the evidence, and the evidence must satisfy the four-prong test set out in *People v. Spoto*, 795 P.2d 1314 (Colo. 1990).  *See People v. Garner*, 806 P.2d 366, 372-73 (Colo. 1991).  First, the evidence must relate to a material fact.  *Spoto*, 795 P.2d at 1318.  Second, the evidence must be logically relevant to that material fact: It must tend to make the existence of the material fact more or less probable.  *Id.*  Third, the evidence's logical relevance must be independent of the prohibited character inference.  *Id.*  Fourth, the evidence's probative value

must not be substantially outweighed by the danger of unfair prejudice. *Id.*

¶ 60   A trial court has substantial discretion in deciding whether to admit evidence of other acts. *Perez v. People*, 2015 CO 45, ¶ 22. "In deference to the trial court's discretion, we must assume the maximum probative value and the minimum unfair prejudice to be given the evidence." *Yusem v. People*, 210 P.3d 458, 467 (Colo. 2009).

## C. Analysis

¶ 61   We discern no abuse of discretion in the trial court's admission of Messerly's interaction with Hatten. We begin with the requirement that the prosecution prove the existence of the prior acts by a preponderance of the evidence. Although the court made no specific finding concerning this requirement, we conclude it is implied in the court's ruling because Messerly did not argue that someone else committed these prior acts or assert that they never occurred. *See People v. McGraw*, 30 P.3d 835, 838 (Colo. App. 2001) (trial court's ruling admitting evidence under CRE 404(b) necessarily implied a finding that the court was satisfied, by a

28

preponderance of the evidence, that defendant committed the other act).

¶ 62    The child abuse statute requires that the defendant knowingly or recklessly caused serious bodily injury, § 18-6-401(1)(a), (7)(a)(III), or death, § 18-6-401(1)(a), (7)(a)(I) to a child.  The culpable mental state relates "to the nature of the offender's conduct in relation to the child or to the circumstances under which the act or omission occurred," not a particular injury to the child.  *People v. Archer*, 2022 COA 71, ¶ 19 (quoting *People v. Deskins*, 927 P.2d 368, 371 (Colo. 1996)).

> Thus, "knowing" child abuse does not require that the defendant is aware that his conduct will cause serious bodily injury.  Instead, to knowingly commit child abuse, a defendant need only be aware of the conduct he is engaging in with the child.  Similarly, to recklessly commit child abuse, a defendant need only consciously disregard a substantial and unjustifiable risk that, given the child's circumstances, the child may be injured.

*Id.* at ¶ 19.

¶ 63    As to *Spoto*'s first and second factors, "[t]he first prong of the *Spoto* test is the easiest to satisfy."  *Yusem*, 210 P.3d at 464.  A material fact is one "that is of consequence to the determination of

29

the action." CRE 401. "So long as the purposes for which the prior act evidence is offered are somehow probative of an ultimate fact, the first prong is satisfied." *Yusem*, 210 P.3d at 464. And to satisfy the second prong, the prosecution "need only show logical relevance — that the prior act evidence has any tendency to make the existence of the material fact more or less probable than without the evidence." *Id.* at 464-65.

¶ 64 Messerly's mental state was of consequence to the determination of whether she committed child abuse. *See Archer*, ¶ 19. Further, the evidence was logically relevant to prove the absence of mistake or accident. The mental state the prosecution had to prove was that Messerly "knowingly" or "recklessly" caused serious bodily injury or death to a child. Therefore, the absence of mistake or accident was relevant to both to her awareness of the conduct in which she was engaging and to whether she consciously disregarded a substantial and unjustifiable risk that, given the children's circumstances, the children may be injured. *See id.* Evidence that Messerly's car got stuck in the winter months when she was not dressed appropriately for the weather made it more probable that she was aware of or consciously disregarded a

substantial and unjustifiable risk of injury to her children. *See People v. Fry*, 74 P.3d 360, 370-71 (Colo. App. 2002) (evidence of other acts tending to show the defendant's absence of mistake or accident related to a material fact were logically relevant), *aff'd*, 92 P.3d 970 (Colo. 2004).

¶ 65    Concerning the third *Spoto* factor, we conclude that the other acts evidence was logically relevant independent of any impermissible character inference. *See Jones*, ¶ 16. Although the other acts evidence "could support a propensity inference, *Spoto* 'does not demand the absence of the inference' but 'merely requires that the proffered evidence be logically relevant independent of that inference.'" *People v. McBride*, 228 P.3d 216, 227 (Colo. App. 2009) (quoting *People v. Snyder*, 874 P.2d 1076, 1080 (Colo. 1994)). The evidence of Messerly's interaction with Hatten was relevant to Messerly's mental state independent of the prohibited character inference.

¶ 66    Concerning the fourth *Spoto* factor, and giving the evidence its maximum probative value, we conclude that its probative value outweighed any danger of unfair prejudice. *See* CRE 403; *People v. McCants*, 2021 COA 138, ¶ 36. As discussed, evidence of

Messerly's interaction with Hatten was probative of her mental state and of whether the incident could be attributed to accident or mistake instead of knowing or reckless conduct. The probative value of this evidence was not substantially outweighed by any danger of unfair prejudice.

¶ 67   Accordingly, we discern no abuse of discretion in the court's admission of the other acts evidence.

## V.   Disposition

¶ 68   The judgment is affirmed.

JUDGE GOMEZ and JUDGE MEIRINK concur.